Submitted April 29, reversed and remanded August 13, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEKAINANI OSORNO,
aka Kekaimanni Osorono,
*Defendant-Appellant.*

Multnomah County Circuit Court
120444112; A151949

333 P3d 1163

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

A jury convicted defendant of driving under the influence of intoxicants (DUII), reckless driving, and failure to perform the duties of a driver when property is damaged. At trial, the prosecutor elicited testimony regarding defendant's invocation of her right to remain silent, despite a pre-trial ruling that such evidence was inadmissible. The trial court denied defendant's motions for a mistrial and for a new trial based on its conclusion that, although the elicitation of the testimony was clearly improper, it did not prejudice defendant's right to a fair trial. We agree with defendant that the trial court erred in denying defendant's motion for a mistrial. We reverse and remand.

. The facts pertinent on appeal are not disputed. A green sport-utility vehicle (SUV) collided with a vehicle driven by Aleksandra Dikova. When the SUV immediately left the scene, Dikova called the police and described the SUV that had hit her. A short time later, police observed an SUV matching that description in a convenience store parking lot. As Sergeant Snyder pulled his patrol car into the parking lot, defendant, who was standing near the SUV, began walking away. Snyder called out to her several times, but defendant continued to walk away. Snyder took hold of defendant and walked her to his patrol car. Defendant told Snyder that the SUV belonged to her, but that her friend had been driving it and had left on foot. Snyder handcuffed defendant and placed her in his patrol car.

Police transported Dikova's brother, Vasiliy Dikov, who had been riding with Dikova at the time of the collision, to the parking lot to determine if Dikov could identify defendant as the driver of the SUV. Dikov had told police that he believed the SUV's driver was either Filipino or African American. When Dikov arrived at the parking lot, police removed defendant, still handcuffed, from the back of the patrol car, to face Dikov. Dikov said something to the effect of, "that is the person that hit us." He told police that he was 100 percent sure. The police told Dikov that they were "pretty sure" defendant had been the driver.

Defendant was taken to a police station, where Officer Martinson administered field sobriety tests. Defendant

failed the tests. She submitted to a breath test, which revealed a blood-alcohol-content (BAC) level of .14. Martinson asked defendant "when she stopped drinking," to which defendant replied, "Don't want to say anything incriminating."

Prior to trial, defendant sought to exclude any evidence that she had invoked her right against self-incrimination during her interview with Martinson. The trial court agreed that "that would not be admissible."

At trial, however, the following exchange occurred during the state's redirect examination of Martinson:

"[PROSECUTOR]: And did she say when she started drinking?

"[MARTINSON]: She stated at 10:00 a.m.

"[PROSECUTOR]: Did she say when she stopped drinking?

"[MARTINSON]: She told me, 'Don't want to say anything incriminating.'"

Defendant objected, and counsel met immediately with the trial judge in chambers, where defendant moved for a mistrial. Following that conference, the court instructed the jury as follows:

"[THE COURT]: Ladies and gentlemen, I would instruct you to disregard the last statement that was made, that it is not information that you can consider in deciding this case. Okay? So if you wrote anything down, cross it off your notes and you must disregard it."

Subsequently, outside the presence of the jury, the trial court allowed defendant to make a record of her in-chambers motion for a mistrial:

"[THE COURT]: We did have a discussion before trial started in which [defendant] specifically moved in limine to exclude any discussion or any such answer as an indication of the defendant's right to—right to remain silent. It seemed to me the State agreed at that time, and as to the Court, that that would be an improper—or could be an improper indication of the right to counsel but the State was not going to go there, in any event, so now * * * [defendant] did move for mistrial in chambers.

"* * * * *

"[DEFENSE COUNSEL]: I think that the district attorney knew exactly which statement I was talking about. I specifically told her, this is the statement in the report, right here, that I don't believe should be allowed into evidence. I don't think anybody should be able to testify to that because it's her right to invoke her constitutional [rights] under the Oregon and U.S. Constitutions, the right to remain silent and not to answer questions and to invoke.

"* * * * *

"Letting it in in front of the jury is—it should be a mistrial. The jury's heard it. We took about a minute or two in chambers right after the statement came out to talk about it so they were sitting here in silence without the Judge or the attorneys in the courtroom, so obviously they knew this was significant; came back in, and there was an instruction saying, 'Don't'—'You know, disregard that statement.' The bell is rung. You cannot unring the bell, and the case law supports that. I think this is a mistrial. I think it's clear.

"* * * * *

"[PROSECUTOR]: This was accidental. I did not intentionally want a statement to come in that had been ruled to be inadmissible, and so I would ask that we do not have a mistrial, that the curative instruction in this case is sufficient to caution the jury that they're not supposed to—they're supposed to disregard this statement and to not consider it when they are deliberating."

The prosecutor argued further that, while the officer "should not have testified to the defendant's statement," a "mistrial [would be] the most extreme option," and that the curative instruction was a sufficient remedy. Defense counsel disagreed:

"[DEFENSE COUNSEL]: The problem is [defendant's] statement by saying, 'I don't want to incriminate myself,' * * * only makes sense in the context if she was driving because it's not against the law to drink, so she's basically saying to the officer * * * that she's guilty in that statement[.]"

The court denied defendant's motion for mistrial, concluding that:

"[THE COURT]: [M]y view of the totality of the evidence presented so far and the impact of this statement which was, again, in response to the question, 'What time did you stop drinking,' and the defendant allegedly responded, 'Don't want to say anything incriminating,' which is what the officer repeated, based on all the other information that was elicited and the other evidence that's been presented at trial, I don't—and as much as I'm disappointed that the State wasn't more careful in this case, I don't find that it was an intentional error on the part of the State. I know [the prosecutor] is new here and I take her at her word that she didn't intend to elicit it. I suspect she will never do it again so I'm not going to grant a mistrial here because of the—again, the whole scope of the evidence that's been presented. If I thought that this were to tip the verdict in any way I would grant a mistrial, but I don't believe that that's the case here so I'm not going to grant it now."

The court invited defense counsel to propose "any additional curative instruction," but counsel declined, explaining, "I believe that the curative instruction that was already given has made the problem worse already, so I would go with no curative instruction over any curative instruction at all."

Defendant was convicted of DUII, ORS 813.010; reckless driving, ORS 811.140; and failure to perform the duties of a driver when property is damaged, ORS 811.700. Defendant moved for a new trial on the same grounds as in her motion for mistrial. The court denied defendant's motion for a new trial, again citing the prosecutor's inexperience, the curative instruction, and the "strength of the evidence," including the "alcohol content" and the "strength of the witness testimony."

On the DUII charge, defendant was sentenced to 10 days in jail and three years of enhanced bench probation, and 100 hours of community service. On the other two charges, defendant was sentenced to two years of probation.

We review the denial of a motion for a mistrial for abuse of discretion, and we will not reverse a conviction on that basis unless the defendant was denied a fair trial. *State v. Veatch*, 223 Or App 444, 455, 196 P3d 45 (2008) (citing

*State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990)). A fair trial is that in which "the verdict is based on the evidence and not on factors external to the proof at trial." *Pachl v. Zenon*, 145 Or App 350, 360 n 1, 929 P2d 1088 (1996), *rev den*, 325 Or 621 (1997).

Defendant argues that she did not receive a fair trial because the state elicited testimony concerning defendant's invocation of her right to remain silent "in a context that gave rise to a prejudicial inference." Defendant further argues that the court's curative instruction was insufficient to overcome that prejudicial inference. The state counters that the curative jury instruction was sufficient to ensure that defendant received a fair trial, and that the trial court acted reasonably within its discretion in concluding that the improper testimony did not affect the jury.

A reference by a prosecutor or a witness to the fact that a defendant exercised a constitutional right, such as the right to remain silent, "may prejudice the defendant's ability to have a fair trial if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense." *Veatch*, 223 Or App at 455-56. *See also State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.").

Whether a defendant has been prejudiced depends heavily on the circumstances. The context in which a reference is made to a defendant's invocation of a constitutional right "may be such that the jury's attention is directed away from the adverse inference of guilt based on the invocation. Where the context makes such an inference unlikely, the trial court does not abuse its discretion if it denies the defendant's motion for a mistrial." *Veatch*, 223 Or App at 456. Conversely, "[w]here the context is such that the jury's attention is *not* directed away from the inference of guilt that the defendant's invocation of a constitutional right may give rise to, a mistrial may be necessary." *Id.* at 457 (emphasis in original). A trial judge is in "the best position to assess

the impact on the jury of a prosecutor's improper comment concerning a defendant's right to remain silent." *State v. Larson*, 325 Or 15, 24, 933 P2d 958 (1997) (citing *State v. Farrar*, 309 Or 132, 167, 786 P2d 161 (1990)).

In *Veatch*, we examined whether, in the context in which jurors were improperly exposed to a defendant's invocation of a constitutional right, the jury was likely to have drawn an adverse inference of defendant's guilt. 223 Or App at 459-60. The defendant was arrested and charged with DUII. *Id.* at 446. At trial, the court ruled that "there could be no mention" of the defendant's telephone calls, one of which was to a lawyer, unless the defendant "opened the door" to that evidence. *Id.* at 448. On questioning from the state, a police officer testified that, when the defendant was asked to take a Breathalyzer test, the defendant asked "to call his lawyer before making that decision." *Id.* Defense counsel objected, and the court instructed the jury that,

> "[A] person has a right to call their lawyer and you're not supposed to make any inferences from that, since they have a right to do it. And so the [s]tate's not even supposed to bring it up. They brought it up. The seven of us are going to totally ignore it, though they couldn't."

*Id.* at 449.

The defendant moved for a mistrial, which was denied. On appeal, we concluded that the officer's statement "likely gave rise to an adverse inference of guilt." *Id.* at 460. We reasoned that a jury would likely infer "that a person arrested for DUII would not ask for an attorney unless he or she was concerned about failing the breath test," and that the officer's statement "was not incidental to some other point that the jury was more likely to be focusing on." Further, "[b]ecause nothing in the context diverted the jury's attention away from that inference, we cannot say that it is unlikely that the jury drew it." *Id.*

Of course, the fact that a jury may draw an adverse inference of the defendant's guilt does not end the analysis. In some cases, the prejudicial effect can be cured by an appropriate jury instruction. *Id.* at 458. "[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *Id.*

(quoting *Smith*, 310 Or at 26). That said, if it is likely that the jury drew an adverse inference, it cannot be assumed that the jury will follow a curative instruction that "merely told [the jury] to disregard the improper statement." *Id.*; *see also State v. Mullenburg*, 112 Or App 518, 521, 829 P2d 98 (1992) ("The dispositive question on this issue, therefore, is whether the purportedly curative instruction was sufficient to unring the bell.") (Internal quotation marks omitted.); *Lakeside v. State of Oregon*, 435 US 333, 345, 98 S Ct 1091, 1097, 55 L Ed 2d 319 (1978) (Stevens, J., dissenting) ("Even if jurors try faithfully to obey their instructions, the connection between silence and guilt is often too direct and too natural to be resisted. When the jurors have in fact overlooked it, telling them to ignore the defendant's silence is like telling them not to think of a white bear."). Thus, our Supreme Court has held that a curative instruction, to be effective, "must do something more than blandly instruct the jury to forget that it has just seen a white bear." *State v. White*, 303 Or 333, 343, 736 P2d 552 (1987) (citing *Lakeside*, 435 US at 345). Whether a court gives a curative instruction quickly after a prejudicial statement is made is a factor "in the effectiveness of a curative instruction." *Veatch*, 223 Or at 460. *See also Smith*, 310 Or at 27-28.

In *White*, after the prosecutor referred to the defendant's decision not to testify in a codefendant's trial, the court offered the following instruction to the jury:

"'Ladies and gentlemen, before we recessed, [the prosecutor] had made some comment in his opening statement about [defendant] having been called to testify in [co-defendant's] matter and not having testified, chosen not to do so.

"'I have ruled that that matter is not relevant in this case. You will not be hearing any evidence about that, and that there are any number of reasons why that may have occurred would have nothing to do with any that is probative of the evidence in this case. So in no way are you to take that into account or in any way to discuss or consider what [the prosecutor] has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case.'"

303 Or at 337-38. The Supreme Court concluded that, "the kind of instruction given here did no more than tell the

jury that defendant's refusal to testify in [codefendant's] trial was irrelevant," and was thus inadequate to cure any adverse inference drawn by the jury of the defendant's guilt. *Id.* at 343-44.

In *Veatch*, we compared that case's jury instruction to the one given in *White* and ultimately concluded that, while "less bland" than the instruction given in *White*, "informing the jury that a person has a right to call an attorney and that the state is 'not even supposed to bring it up' does not negate the inference that the person chose to exercise the right because he was conscious of his guilt." 223 Or at 461.

In this case, we first observe that there can be no doubt that Martinson's answer to the state's question, by alluding to defendant's stated desire not to "say anything incriminating," gave rise to an adverse inference of defendant's guilt. It was improperly made known to the jury that defendant, facing charges including DUII, told police that she did not want to incriminate herself when they asked her when she stopped drinking. As defendant's trial counsel correctly noted below, because intoxication is not a crime, defendant's answer to the question "when did you stop drinking?" would be incriminating only if defendant was driving at the time of the collision. The potential for an adverse inference is plain. That is why defendant sought, and the trial court agreed prior to the trial, to exclude that evidence. Furthermore, when Martinson's testimony was nonetheless elicited, nothing in the record reflects (nor does the state argue on appeal) that "the jury's attention [was] directed away from the adverse inference of guilt based on the invocation." *Veatch*, 223 Or App at 456.

The trial court, despite agreeing that the Martinson testimony was improper, appears to have relied on three factors—the inadvertence of the prosecutor's misconduct; the curative instruction; and the other evidence against defendant—in concluding that defendant's right to a fair trial had not been violated. With respect, we disagree.

First, although we have no reason to doubt the trial court's view that the prosecutor's misconduct was inadvertent, that conclusion is simply not relevant to the question

whether the prosecutor's actions affected defendant's right to a fair trial. *See, e.g., State v. Grenawalt,* 86 Or App 96, 98, 738 P2d 232, *rev den,* 304 Or 405, 745 P2d 1225 (1987). In *Grenawalt,* the defendant moved for a mistrial after the prosecutor, in his opening statement, told the jury that one of the defendant's co-defendants had already been convicted of the crime for which the defendant was on trial. *Id.* The defendant moved for a mistrial, which the trial court denied, reasoning that the prosecutor's statement was "an inadvertent slip of the tongue" that the court did not find prejudicial. *Id.* On appeal, we reversed and remanded the case for a new trial, concluding that the statement prejudiced the defendant because, "[t]he prosecutor's remark, whether inadvertent or not, clearly suggested to the jury that because a co-defendant had been found guilty in a separate trial, defendant should be found guilty 'as well.' The fact that a prosecutor's conduct is not intentional does not affect a defendant's fundamental right to a fair trial." *Id. See also State v. Alvord,* 118 Or App 111, 116, 846 P2d 432 (1993) ("[T]he prosecutor engaged in misconduct, even if unintended, by asking questions that reasonably led to the answer about defendant's refusal to talk about the incident."); *State v. McClatchey,* 259 Or App 531, 540-41, 314 P3d 721 (2013) ("[T]he point of a mistrial is not to punish counsel; it is to ensure that the defendant receives a fair trial. Even when a prosecutor intentionally makes or elicits comments on a defendant's exercise of constitutional rights, those comments can create reversible error only to the extent that they likely prompted the jury to draw adverse inferences about the defendant's guilt.").

Second, the curative instruction was insufficient to cure the prejudicial effect of Martinson's testimony. The trial court no doubt made its best effort to undo the damage, first by immediately convening counsel in chambers and then by promptly instructing the jury to disregard the statement. But, as our case law makes clear, curative instructions in this particular context are often inadequate. Merely instructing the jury to ignore "the last statement that was made" because it was "not information [the jury] can consider in deciding [the] case," is even less tailored to cure the prejudice than the instructions that were considered too "bland" in both *Veatch* and *White.* The jury here

was effectively asked to forget that it had just seen a "white bear," and no part of the instruction "negate[d] the inference" that defendant made the statement "because [she] was conscious of [her] guilt." *Veatch*, 223 Or at 461.

Third, the trial court, in denying defendant's motion for a mistrial, referred to the other evidence against defendant to conclude that the improper testimony from Martinson did not affect the jury's verdict. On appeal, the state defends that conclusion by pointing to "the other evidence—which included defendant's .14 BAC, her failure of field sobriety tests, and her unchallenged admission to consuming alcohol the day of the incident." The problem with this rationale is that the "other evidence" cited by the state went only to the question of defendant's intoxication at the time of her arrest. It shed no light on whether she was driving— an essential element of all three of the charges against defendant, and the element regarding which Martinson's testimony was damning.[1]

For the foregoing reasons, we conclude that the trial court erred in denying defendant's motion for a mistrial. That conclusion obviates any need to separately address the second assignment of error, regarding the denial of the motion for a new trial.

Reversed and remanded.

---

[1] We note that in denying the motion for a new trial, the trial court cited the "witness testimony" as part of the evidence against defendant. Although the court did not elaborate, it may have been referring to the identification of defendant by Dikov. However, in denying the motion for *mistrial*, the trial court did not mention Dikov's identification as a reason for denying the motion, and the state, on appeal, does not present any argument as to how, if at all, that identification should figure into the analysis regarding the denial of the motion for a mistrial.