DEHOOG, P. J.
*563 Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.011, reckless driving, ORS 811.140, and driving while suspended, ORS 811.182. She assigns error to the trial court's denial of her motion for mistrial after a state trooper testified that defendant, in response to the trooper's questioning, had stated "that she didn't want to talk to [the trooper] without talking to her attorney." Reviewing for abuse of discretion, State v. Osorno , 264 Or. App. 742, 747, 333 P.3d 1163 (2014), we conclude that the admission of that testimony deprived defendant of a fair trial. Accordingly, we reverse and remand for a new trial.
The relevant facts are undisputed. Defendant was involved in a single-vehicle car accident. The paramedics who responded to the *734 accident observed that defendant had suffered a large cut to her forehead and appeared to be confused and emotional. Defendant admitted to the paramedics that she had been drinking and initially told them that she had been the only person in the vehicle; she maintained, however-both to the paramedics and, later, to the police-that she had not been the driver. The police did not speak with defendant until three hours after the accident, at a hospital where the paramedics had taken her for treatment. There, after a blood sample drawn with defendant's consent revealed a blood-alcohol content of .12 percent, the state trooper investigating defendant's accident arrested her for DUII.
At trial, the trooper explained on direct examination that, when she first entered defendant's hospital room, defendant had "pretended that she wasn't responsive." Defendant objected, arguing that the trooper was not capable of judging whether defendant had been pretending. The court sustained the objection, stating, "Before I would allow that, I'm going to have to have at least some more basic information." The trooper then testified that defendant had appeared awake and alert but "initially" would not respond to the trooper's questions. The trooper explained, however, that defendant had later responded, and the prosecutor asked the trooper to "describe the circumstances." The trooper testified:
*564 "Sure. Again I had walked in, and initially my-my conversation was I wanted to ask her about the crash, make sure that there wasn't any other occupants, find out how the crash occurred, how fast was she going, was she wearing her seatbelt, things of that nature involved-regarding the crash. She kind of just looked at me and then again I-I introduced myself. She told me that she didn't really feel like talking. I attempted multiple times to try and get her to talk to me, and I explained the reason why, and that's kind of when she told me that she didn't want to talk to me without talking to her attorney, and she-"
Defendant again objected at that point and, outside the presence of the jury, moved for a mistrial "on the basis that counsel elicited [defendant's] invocation of her constitutionally guaranteed right to counsel." In response to defendant's objection, the trial court questioned whether a curative instruction would "gain anything or just make it worse." Defendant expressly declined to argue for or against a curative instruction, other than to state that "the bell has been rung and cannot be sufficiently unrung."
The trial court ultimately denied defendant's mistrial motion and elected not to give a curative instruction. The court explained some of its reasoning and instructed the prosecutor to tread carefully once the witness retook the stand, stating:
"[W]hat I thought you [the prosecutor] were dealing with was this implication that she was pretending. You were going through a * * * series of questions. My conclusion is it was not prejudicial under the circumstances, and * * * I'm denying the motion for mistrial. * * * You're going to have to be careful where you're headed with this, because [the trooper has] come out and said that. There was quite a bit of answer coming up to suggest that you were intending to ask to get to that point. * * *
"I don't think a curative instruction is going to help us at all, because it's just going to suggest I believe more than what I've already indicated to the jury * * *. I think it just overemphasizes the point, and I don't have a curative instruction in front of me to do at this point in time. So I don't feel it's necessary."
After the jury returned to the courtroom, the state resumed examining the trooper by asking whether, while at the *565 hospital, she had obtained defendant's consent for a blood draw. The trooper testified that she had done so and had arrested defendant based on the results. The jury ultimately found defendant guilty on all charges.
The only issue before us on appeal is whether the trial court erred in denying defendant's motion for mistrial. We review the court's decision for abuse of discretion, Osorno , 264 Or. App. at 747, 333 P.3d 1163, noting that the trial court "is in the best position to assess the impact of the complained-of incident and to select the means (if *735 any) necessary to correct any problem resulting from it." State v. Wright , 323 Or. 8, 12, 913 P.2d 321 (1996). We will not find the denial of a mistrial to be an abuse of discretion unless the defendant was denied a fair trial. Osorno , 264 Or. App. at 747-48, 333 P.3d 1163. A witness's reference to the defendant's exercise of a constitutional right jeopardizes the right to a fair trial "if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense." State v. Veatch , 223 Or. App. 444, 455, 196 P.3d 45 (2008). " '[T]he state should not benefit from the improper * * * inference that a defendant who invokes [his or her] right to counsel is guilty of the charged offense,' " because such an inference would penalize the exercise of that right. Id. at 456, 196 P.3d 45 (quoting State v. Nulph , 31 Or. App. 1155, 1162, 572 P.2d 642 (1977), rev. den. , 282 Or. 189 (1978) ).
The trial court's ruling and the parties' arguments at trial and on appeal all assume that the trooper's testimony-that defendant initially refused to speak with the trooper without her attorney's advice-was a comment on defendant's invocation of a constitutionally protected right. For purposes of this appeal, we accept the unchallenged assumption that the testimony, so characterized, was an impropriety of the sort that could prejudice defendant's right to a fair trial.[1] We must therefore determine whether the *566 trial court abused its discretion in concluding that a mistrial was not warranted-that is, in concluding that defendant could receive a fair trial notwithstanding the trooper's improper comment on defendant's invocation of a constitutional right and the court's subsequent decision not to give a curative instruction. In making that determination, we focus on the context in which defendant made her statement, the context in which that statement was introduced at trial, and the content or absence of any curative instruction. See, e.g. , Osorno , 264 Or. App. at 748-53, 333 P.3d 1163 (examining those circumstances).
Starting with the context in which defendant made her statement, we view the surrounding circumstances as inviting the impermissible inference that defendant wanted to speak with her attorney because she was guilty. We reached the same conclusion on similar facts in both Veatch and Osorno . In Veatch , an officer testified that, after having been arrested on suspicion of DUII, the defendant had asked to speak with his attorney before deciding whether to submit to a breath test to measure his blood-alcohol content. 223 Or. App. at 448, 196 P.3d 45. Given that the defendant had made the request in response to being asked to provide a potentially incriminating breath sample, we readily concluded that the jury would have inferred his guilt from that request: "[A] jury would likely infer that a person arrested for DUII would not ask for an attorney unless he or she was concerned about failing the breath test-in other words, a jury would likely see it as a tacit admission of guilt." Id. at 460, 196 P.3d 45. Similarly, in Osorno , after a defendant involved in a car crash was arrested on suspicion of DUII and given a breath test, the arresting officer asked her when she had stopped drinking; the defendant replied, "Don't want to say anything incriminating." 264 Or. App. at 744-45, 333 P.3d 1163. On appeal, we expressed "no doubt" that the defendant's statement had given rise to an adverse inference of guilt. Id. at 751, 333 P.3d 1163. We observed that, because the defendant had admitted to being intoxicated, the only potentially incriminating response would be *567 one that disclosed that she had been driving at the time of the collision, *736 something she had expressly denied. Id. And, because it was therefore reasonable for the jurors to assume that the defendant had invoked her right to remain silent to avoid the disclosure of that incriminating fact, "[t]he potential for an adverse inference [was] plain." Id.
The state, attempting to distinguish Osorno and Veatch , argues that, in each of those cases, the defendant's statement came in response to "a specific question capable of eliciting incriminating testimony." Here, on the other hand, the trooper did not specifically ask defendant about her intoxication or other potentially incriminating circumstances. According to the trooper, she had "wanted to ask [defendant] about the crash, make sure that there wasn't any other occupants, find out how the crash occurred, how fast was she going, was she wearing her seatbelt, things of that nature." Each of the trooper's questions, however, was premised on defendant having been the driver-which, like the defendant in Osorno , she had denied-and it was in response to those questions that defendant stated "that she didn't want to talk to [the trooper] without talking to her attorney."
Even though the questioning of defendant was less direct than in Veatch and Osorno , we see no meaningful distinction between the circumstances of those cases and the facts present here. In each case, the defendant invoked his or her right to remain silent in response to an officer's questions regarding the details surrounding a suspected DUII. And, mirroring Osorno , defendant's response to the questions here would have incriminated her only if she had been driving the car, contrary to her position at trial. And, as in that case, because defendant's responses to the trooper's questions about the presence of "other occupants" and "how fast was she going" had the potential to reveal that she had, in fact, been driving, the "potential for an adverse inference" is again plain. Osorno , 264 Or. App. at 751, 333 P.3d 1163.
We turn next to the context in which the trooper's improper testimony was admitted. In considering that context, we ask whether the circumstances would have drawn the jury's attention to defendant's assertion of her rights, *568 thereby further encouraging the jurors to draw adverse inferences as to her guilt. That inquiry focuses on how the improper testimony was likely to affect the jury, rather than on the prosecutor's intent, which is "simply not relevant to the question whether the prosecutor's actions affected defendant's right to a fair trial." Id . at 751-52, 333 P.3d 1163 ; State v. McClatchey , 259 Or. App. 531, 540-41, 314 P.3d 721 (2013) ("Even when a prosecutor intentionally makes or elicits comments on a defendant's exercise of constitutional rights, those comments can create reversible error only to the extent that they likely prompted the jury to draw adverse inferences about the defendant's guilt.").
Once again, the circumstances in defendant's case are similar to those in Veatch and Osorno . In each case, a witness made a single reference to the defendant's invocation of a constitutional right, and the defendant immediately objected. To the extent that there are dissimilarities between the cases, the improper testimony here was given in an arguably more prejudicial context than in those other cases. The prosecutor here had been exploring the trooper's opinion that defendant's "pretend[ing]" to be unresponsive was really an effort to avoid speaking with the officer.[2] In our view, that context would likely have conveyed to the jury that defendant was engaged in a pattern of concealment in an effort to avoid incriminating herself.
Collectively, the circumstances in which defendant made her statement and the context in which the jury heard the statement at trial would have led the jury to infer that, because defendant had invoked her right to counsel, she must be guilty. As in Veatch , defendant's statement and the trooper's testimony describing it were "not [merely] incidental to some other point that the jury was more likely to be focusing on."
*737 223 Or. App. at 460, 196 P.3d 45. And because, as in that case, "nothing in the context diverted the jury's attention away from [the inference of guilt], we cannot say that it is unlikely that the jury drew it." Id.
*569 In opposing that conclusion, the state reasons that, because the trial court "is in the best position to assess the impact" of improper testimony on the jury, Wright , 323 Or. at 12, 913 P.2d 321, we should defer to that court's assessment that the trooper's testimony was "not prejudicial under the circumstances." But that reasoning is based on a flawed understanding of the trial court's statement. Unlike the state, we do not understand the court to have been contemplating potentially adverse jury inferences when it said that the testimony was "not prejudicial under the circumstances." Instead, that statement appears to have been in reference to the ultimate standard that a court must apply in determining whether a mistrial is required: Was the impropriety so prejudicial that defendant could not receive a fair trial? To the extent, however, that the court meant to express its view that the jury would not have drawn inferences harmful to defendant from the trooper's testimony, we respectfully disagree. Because that determination-if, in fact, the trial court made it-appears to have been the product of the court's reasoning rather than its unique vantage point, we conclude, as we did in Veatch and Osorno , that the jury would likely have drawn the impermissible inference that defendant wanted to speak with an attorney because she was guilty.
Finally, we consider the fact that the trial court opted not to give the jury a curative instruction. We are aware of no decision in which either we or the Supreme Court have affirmed the denial of a motion for mistrial in a case where the trial court gave no curative instruction in circumstances where the jurors were likely to have drawn a negative inference from the defendant's exercise of a constitutional right. Rather, our review has typically been for the adequacy of an instruction that was given; under those circumstances, we have repeatedly held that the trial court abused its discretion despite having given a curative instruction. For example, in Veatch , we held that the following instruction, given immediately after the court had sustained the defendant's timely challenge to objectionable testimony, was insufficient to preserve the defendant's right to a fair trial:
"To be real honest with you, a person has a right to call their lawyer and you're not supposed to make any *570 inferences from that, since they have a right to do it. And so the State's not even supposed to bring it up. They brought it up. The seven of us are going to totally ignore it, though they couldn't."
223 Or. App. at 449, 196 P.3d 45. We explained that, "once a juror has drawn the inference that the defendant tacitly admitted guilt, it would be exceedingly difficult to disregard both the evidence that gave rise to that inference and-more importantly-the inference itself." Id. at 461-62, 196 P.3d 45. And in Osorno , we held that the following instruction was insufficient:
"Ladies and gentlemen, I would instruct you to disregard the last statement that was made, that is not information that you can consider in deciding this case. Okay? So if you wrote anything down, cross it off your notes and you must disregard it."
264 Or. App. at 745, 333 P.3d 1163. We noted without further comment that the trial court had invited the defendant to propose an additional curative instruction and that the defendant had declined to do so, stating his opinion that the original curative instruction had only made the problem worse. Id. at 747, 333 P.3d 1163.
Here, in light of our conclusion that the trooper's testimony would likely have prompted the jurors to impermissibly infer that defendant was guilty, the trial court abused its discretion in denying a mistrial when the court made no effort to mitigate that impermissible effect through a curative instruction or otherwise. We recognize that, based on his assessment that "the bell" could not be "sufficiently unrung," defense counsel opted not to offer a possible curative instruction or weigh in on whether one should be given. That decision, however, directly followed the trial court's observation that a curative instruction might "just make it worse." Moreover, although the state notes *738 that the prosecutor suggested that a curative instruction might be appropriate, the state does not suggest that defendant's failure to seek a curative instruction somehow invited any error or otherwise forecloses her argument that her trial was unfair.
Accordingly, we attach little significance to defendant's decision not to propose a curative instruction. Cf. Osorno , 264 Or. App. at 747, 752, 333 P.3d 1163 (evaluating prejudicial effect of improper testimony in light of curative instruction that *571 the trial court gave; disregarding defense counsel's refusal to propose "any additional curative instruction" at court's request due to counsel's belief that "the curative instruction that was already given has made the problem worse"). Ultimately, it is the court, not defendant, that "must decide whether to grant the motion, to cure the effect of inappropriate conduct or testimony by giving a proper instruction instead, or to do nothing at all." State v. Evans , 211 Or. App. 162, 166, 154 P.3d 166 (2007), aff'd , 344 Or. 358, 182 P.3d 175 (2008). And, in the absence of a curative instruction-or even the opportunity to hear the trial court sustain defendant's objection-nothing that occurred at trial drew the jurors' attention away from the improper inference or informed them that it was an inference that they were not permitted to draw. Under those circumstances, denying a mistrial was an abuse of discretion.[3]
Reversed and remanded.

We express no opinion as to whether defendant's constitutional right to counsel (either freestanding or as part of the Miranda right to remain silent) had attached when the trooper questioned her. Had the state disputed that conclusion in the trial court, the record may well have developed differently. Nor do we express an opinion on whether, even if the right had not attached, the trooper's testimony was nonetheless impermissible. See State v. House , 282 Or. App. 371, 375 n. 3, 385 P.3d 1099 (2016) (noting that the Supreme Court, in State v. Schiller-Munneman , 359 Or. 808, 813, 377 P.3d 554 (2016), had left open the question whether, absent custody or compelling circumstances, a defendant's invocation of the right to silence in response to police questioning may be admitted as substantive evidence at trial, and accepting the parties' assumption that the state was nonetheless not permitted to draw attention to the defendant's silence).

The parties and the trial court apparently assumed that the state was permitted to introduce evidence of defendant's reticence to speak with the trooper but not evidence of defendant's statement about an attorney. As noted previously, see 293 Or. App. at 565 n. 1, 429 P.3d at 735, we accept those assumptions without expressing an opinion as to whether they are correct.

The state does not argue that the error was harmless. We are of the view that the error was not harmless under the circumstances. We observe that there was conflicting evidence from which the jury could have found that the state had failed to prove beyond a reasonable doubt that defendant was the driver at the time of the accident, and we do not take on the jury's role by weighing the evidence ourselves.