Argued and submitted June 29, 2020, reversed and remanded October 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CASEY JAMES SCHUMACHER,
*Defendant-Appellant.*

Washington County Circuit Court
18CR27347; A170013

500 P3d 698

In this criminal appeal, defendant assigns error to the trial court's denial of his motion for a mistrial, contending that the court erred in denying the motion because the arresting officer's testimony referred to defendant's invocation of his constitutional right to counsel and, therefore, prejudiced defendant's ability to have a fair trial. He argues that, from the officer's testimony, the jury was likely to infer that defendant had exercised his right to counsel because he was guilty of the charged offense. *Held*: Because the trial court did not act to cure the improper reference to defendant's invocation of his right to counsel, and no other evidence negated the inference of guilt, the denial of defendant's motion for mistrial was error.

Reversed and remanded.

Ronald D. Grensky, Senior Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

In this criminal appeal, defendant assigns error to the trial court's denial of his motion for a mistrial, contending that the court erred in denying the motion because testimony by the arresting officer that referred to defendant's invocation of his constitutional right to counsel prejudiced defendant's ability to have a fair trial. He argues that, from the officer's testimony, the jury was likely to infer that defendant had exercised his right to counsel because he believed that he was guilty of the charged offense. Because the trial court did not act to cure the improper reference to defendant's invocation of his right to counsel, and no other evidence negated the inference of guilt, we agree with defendant that the denial of his motion for mistrial was error, and accordingly reverse and remand. We do not reach defendant's remaining assignments of error.

## FACTS

Responding to a late-night call about a car that had crashed into a tree, police officers arrived at the scene and located defendant, the car's owner, a couple of blocks away from the crash. The responding officer thought that defendant smelled of alcohol. Defendant denied drinking and driving, and the officer asked him to perform field sobriety tests (FSTs), which defendant refused. The officer warned defendant that his refusal could be used against him, but defendant again refused. After that, defendant requested a lawyer. He was ultimately arrested on suspicion of driving under the influence of intoxicants (DUII). A few hours later, defendant took a breath-alcohol test at the police station, the result of which was a blood alcohol content (BAC) of .05 percent—an amount below the statutory limit. At that time, defendant agreed to talk "a little bit" with the officer and told the officer that someone else had driven the car. Defendant was charged with felony driving under the influence of intoxicants (DUII) and reckless driving.

At trial, the prosecutor highlighted in her opening statement defendant's refusal to perform the FSTs and that defendant would have been more intoxicated at the time of the crash than he was hours later when he took the breath-alcohol test at the police station.

On direct examination, the arresting officer described the nature of FSTs and explained the legal effects of refusing to perform them. Then, he said that defendant "just refused to admit to anything and didn't want to take any standardized field sobriety test or anything of that nature." Later, the prosecutor asked the officer again about defendant's response to the request to perform FSTs. The officer described how defendant had refused, despite being warned of the adverse legal effects of the refusal. The officer then added that "[defendant] refused to submit to [the FSTs,] and he requested a lawyer as well, so [I] ended the interview as well."

Defendant's attorney interjected, saying, "I have a matter for the court." A sidebar off the record and out of the presence of the jury followed, after which, the court resumed the trial, saying "continue." Later in his testimony, the officer discussed how defendant had ultimately agreed to talk to him a little, even though he had earlier invoked his right to counsel.

After the officer testified, defendant, out of the presence of the jury, asked the court to rule on his motion to strike the reference to defendant's invocation of his right to counsel. The court said, "I will just say that [that] will be put into a curative instruction, which I would envision you preparing." Defendant responded, "I would ask for a mistrial. It's an impermissible thing to be testified to." Defendant maintained that the refusal to perform FSTs, coupled with the reference to his invocation of rights created an inference that defendant knew that he was guilty and "had something to hide."

To that, the state replied that a curative instruction would address the issue, and that if it had been error, the error was "harmless," because the officer later testified that defendant had eventually agreed to talk with the officer without an attorney. The court agreed with the state and denied the motion for mistrial.

Near the end of trial, out of the jury's presence, the court asked defendant if he had "put together some kind of a curative instruction." Defendant replied that he had decided not to offer one because he would "rather not emphasize it

more to the jury," which the court said was "frankly under-
standable." Defendant was convicted and appeals.

### DISCUSSION

On appeal, defendant reprises the arguments that
he made below, contending that the trial court erred in
denying his motion for a mistrial because the officer's testi-
mony concerning defendant's invocation of the right to coun-
sel denied defendant a fair trial as a result of the inference
of guilt that the jury might draw from that testimony. The
state argues that, in context, the jury likely perceived the
reference to defendant's invocation as an explanation for the
officer's conduct—that, when defendant asked for a lawyer,
the officer "ended the interview." The state also argues that
a curative instruction at the end of trial would have reme-
died any adverse inference, but that defendant had declined
to propose one, and lastly, that any inference of guilt was
abated when, later, the jury learned that defendant eventu-
ally talked to the officer without a lawyer.

Denial of a motion for a mistrial is reviewed for
abuse of discretion, and the court will not reverse a convic-
tion on that basis unless the defendant was denied a fair
trial. *State v. Swanson*, 293 Or App 562, 565, 429 P3d 732,
734 (2018). Reference to a defendant's exercise of a consti-
tutional right jeopardizes the right to a fair trial if the jury
was likely to infer that the defendant had exercised the
right because he believed that he was guilty of the charged
offense. *State v. Veatch*, 223 Or App 444, 455, 196 P3d 45
(2008). The reason for the rule is that the state should not
benefit from an inference that penalizes the exercise of a
constitutional right. *Id*. at 456.

Defendant maintains that the circumstances in
his case are indistinguishable from those in *Swanson*. In
*Swanson*, the defendant crashed her car while intoxicated
and went to the hospital. The trooper testified that, when
he interviewed the defendant, she "pretended to be unre-
sponsive." He testified that, later, she said that she "didn't
want to talk without talking to her attorney." The defen-
dant objected to that testimony and moved for a mistrial.
The court asked whether a curative instruction would "gain
anything or make it worse?" The defendant responded that

"the bell has been rung and cannot be sufficiently unrung." The trial court chose not to give a curative instruction, and it denied the motion for mistrial.

We reversed, holding that the court erred in denying the mistrial motion. In so deciding, we focused on the context in which the defendant (originally) made her statement; the context (at trial) in which it was introduced and whether the jury's attention would have been directed away from the inference of guilt; and the context or absence of any curative instruction. *Swanson*, 293 Or App at 566.

We explained in *Swanson* that the context in which the defendant had invoked her right to counsel "invit[ed] the impermissible inference that defendant wanted to speak to her attorney because she was guilty." *Id*. We reasoned that, leading up to her invocation, the trooper had asked if she had been wearing her seatbelt, how fast she was driving, and if there were other occupants. The defendant's theory was that she was drunk, but she was not the driver. We reasoned that her response to the officer's questions would have incriminated her only if she had been driving the car—a position contrary to the one that she took at trial. *Id*. at 567. In choosing not to answer the officer's questions, we stated that it was reasonable for the jurors to assume that she had invoked her right to silence to avoid disclosing incriminating facts about being the driver, making the likelihood of an inference of guilt "plain." *Id*.

In *Swanson*, we determined that the facts were indistinguishable from those in *Veatch* and *State v. Osorno*, 264 Or App 742, 747, 333 P3d 1163 (2014). Both *Veatch* and *Osorno* involved DUII defendants who, respectively, invoked the right to counsel and to remain silent when the arresting officer requested potentially incriminating information. We concluded that, in that context, the jury could infer guilt from the defendants' invocation. *Swanson*, 293 Or App at 566 (explaining the dispositions in *Veatch* and *Osorno*).

For example, in *Veatch*, when the officer asked the defendant to take a breath test, the defendant responded that he wanted to "to call his lawyer before making that decision." The officer testified to that at trial. 223 Or App at

449. The defendant objected, and the court immediately provided a curative instruction but later denied the defendant's motion for mistrial. *Id*.

We reversed on appeal, concluding that the officer's statement allowed an adverse inference of guilt that had deprived the defendant of a fair trial. *Id*. at 460. We reasoned that "the jury was informed that [the] defendant had invoked the right to counsel in response to being asked to submit to a potentially incriminating breath test." *Id*. We explained that "a jury would likely infer that a person arrested for DUII would not ask for an attorney unless he or she was concerned about failing the breath test—in other words, a jury would likely see it as a tacit admission of guilt." *Id*.

Similarly, in *Osorno*, the defendant was apprehended after she had been identified as the driver of the vehicle involved in a hit-and-run accident. 264 Or App at 744. Her BAC tested over the limit, but she maintained that she had not been the driver. After he saw the defendant's BAC result, the arresting officer asked the defendant when she had started drinking. She answered "10:00 AM." He then asked when she had stopped drinking. The defendant replied, "Don't want to say anything incriminating." *Id*. at 745. The trooper testified to that at trial. The defendant objected, and the court immediately instructed the jury to disregard the officer's statement but later denied the defendant's motion for a mistrial. *Id*. at 746.

We reversed, expressing "no doubt" that the officer's testimony alluding to the defendant's stated desire not to say anything incriminating gave rise to an adverse inference of guilt, because her answer to the question "when did you stop drinking?" would only be "incriminating" if she had been driving the car, an element the state had yet to prove at trial. *Id*. at 751.

Here, defendant maintains that his case is indistinguishable from *Swanson*, *Veach*, and *Osorno* because the context in which he asked for an attorney was in response to the officer's request for potentially incriminating information—the FSTs—and that the jury likely would have inferred that he would not have asked for an attorney unless he believed that he was guilty.

Defendant's argument is persuasive. As in *Swanson*, *Veatch*, and *Osorno*, defendant invoked his right to counsel after the officer asked him for potentially incriminating information—that is, after the officer asked him to perform the FSTs. Thus, the jury in this case could have inferred from the officer's mention of defendant's invocation of the right to counsel that defendant was concerned about failing the FSTs and that his refusal and request for a lawyer was a tacit admission of guilt. *Swanson*, 293 Or App at 566. We agree with defendant that, in this context, the officer mentioning defendant's invocation of his right to counsel could lead to an inference that defendant had "something to hide," and that he was guilty of the charged offense.

Regarding the context in which the improper reference was introduced at trial, the prosecutor, in her case-in-chief, was eliciting testimony about defendant's drunken demeanor and his refusal to engage with the officer or submit to the FSTs when the officer referenced defendant's invocation. Like in *Swanson*, *Veatch*, and *Osorno*, the reference was a single statement apparently unintentionally elicited. But, unless the surrounding context of the reference is of the kind that would draw the jury's attention away from the inference of guilt, a mistrial may be necessary. *Veatch*, 223 Or App at 457.

The state argues that the context of the officer's testimony would have led the jury to focus on the officer's actions, rather than on defendant's invocation. The state relies on *State v. Williams*, 49 Or App 893, 621 P2d 621 (1980), contending that the circumstances in that case are like those here.

*Williams* involved sexual abuse of a minor of whom the defendant had also taken nude photographs. In her opening statement, the prosecutor highlighted the defendant's cavalier attitude concerning the victim's report of abuse. She narrated the defendant's attempt to get an investigator to talk about the case, and explained that the investigator had answered, "I don't want to talk to you about the incident," but the defendant egged him on, asking "What's the big deal? What's going on?" The detective said "Listen * * * you said that you wanted to talk to your attorney first, so I

don't want to talk to you about the incident," but then told the defendant that he was there due to explicit photos the defendant had taken of the victim, to which the defendant had replied "Hey, big deal, she wanted to take her clothes off. So what?" *Id*. at 896.

We affirmed the trial court's denial of the defendant's motion for a mistrial in *Williams*, explaining that the prosecutor's reference occurred during an opening narrative, the context of which did not draw attention to the defendant's exercise of his right to counsel. *Id*. at 898. We further reasoned that the reference to the invocation arose as a reply from the officer who wanted to avoid discussing the case, rather than from the defendant invoking his constitutional rights. *Williams* illustrates how the context surrounding the reference could draw a jury's attention away from any unfavorable inference the reference to the invocation had created. We disagree that *Williams* is a suitable case for comparison here, where the context of the officer's testimony directed the jury's attention to defendant's denial of intoxication, refusal to submit to field sobriety tests, and eventual invocation of his right to counsel.

We note that, even when improper testimony is elicited, that does not end the analysis. In some cases, "the prejudicial effect can be cured by an appropriate jury instruction." *Osorno*, 264 Or App at 749. Thus, we must consider the sufficiency of any curative instruction. *Swanson*, 293 Or App at 569.

Here, the court provided no curative instruction. The state argues that defendant is responsible for that because, when the court asked him whether he had "put together" an instruction, he declined to propose one. Defendant maintains, as he did at trial, that a mistrial was the only appropriate remedy and that a curative instruction at the end of trial could not "unring the bell." We agree with defendant.

In *Swanson*, the trial court had asked the defendant whether a curative instruction should be offered, and the defendant told the court that no curative instruction could "unr[ing]" the bell, after which the trial court decided not to give one and denied the defendant's motion for mistrial. In reversing, we "attach[ed] little significance to defendant's

decision not to propose a curative instruction." *Id*. at 571. We stated that "it is the court, not defendant, that must decide whether to grant the motion, to cure the effect of inappropriate conduct or testimony by giving a proper instruction instead, or to do nothing at all." *Id*. In stating that it is the court that "must decide" whether or not to provide a curative instruction, we noted that we were "aware of no decision in which either we or the Supreme Court have affirmed the denial of a motion for mistrial in a case where the trial court gave no curative instruction." *Id*. at 569. Accordingly, we evaluate the trial court's decision on the matter, rather than defendant's.

Bearing on our analysis is that, in cases where the trial court *has* provided a curative instruction, we have emphasized the immediacy of the court's action following the improper reference. *See Veatch*, 223 Or App at 460-66 (immediacy is a "factor in the effectiveness of a curative instruction"); *see also State v. Halford*, 101 Or App 660, 663, 792 P2d 467 (1990) (an instruction at close of trial that the defendant had a constitutional right not to testify was insufficient to cure prejudice because it was "not timely given").

In addition to the immediacy of its delivery, the instruction's negation of the inference of guilt is significant. For example, in *Osorno*, though the trial court promptly instructed the jury to "not consider" the statement, we determined that the instruction did not effectively "negate the inference" of guilt and, as such, was inadequate. *Id*. at 753. In *Veatch*, the trial court immediately told the jury that "a person has a right to call their lawyer," and to "ignore" the statement. We explained that "quick intervention by the trial court helps cure potential prejudice," but that, nevertheless "the instruction did not unring the bell."

Here, in the absence of a curative instruction—or even the opportunity to hear the trial court strike the testimony after defendant brought it to the court's attention—nothing that occurred at trial drew the jurors' attention away from the improper inference or informed them that it was an inference that they were not permitted to draw. Unlike the trial courts in *Veatch* and *Osorno*, which admonished the jury to disregard the statement, the trial court

here said "continue," then left it up to defendant to decide whether and how the jury should be instructed at the close of trial—a point in time that we have described as "not timely" to effectively cure the prejudicial inference. *Halford*, 101 Or App at 663.

In light of our reversals in cases where the trial court did *something* to cure the prejudicial impact, it strikes us that, when a trial court does *nothing*, it would be error to affirm. As *Swanson* indicates, that is true even when the defendant declines a curative instruction, because it is "the court that must decide" whether and how to cure the prejudicial effect of improper testimony. Although it is true that the trial court "is in the best position to assess the impact of the complained-of incident and to select the means necessary to correct any problem resulting from it," it also is true that a trial court abuses its discretion when it selects a means that does not produce a permissible, legally correct outcome. *Veatch*, 223 Or App at 462. Here, a legally correct outcome would be one where the state did not benefit from an inference that penalized defendant's exercise of a constitutional right.

Finally, the state contends that the inference of guilt was "alleviated" when the jury learned from the officer that defendant "began kind of talking about the incident a little bit." As we have discussed, our decisions have focused on whether the improper inference of guilt had been directly negated or whether, in context, other testimony had drawn the jury's attention away from the inference of guilt. Here, the officer's later testimony was that, several hours after the initial encounter, defendant consented to a breath test and talked to the officer. But nothing in that testimony undermined the inference that defendant had previously requested a lawyer because he believed that he was guilty. The state has not demonstrated otherwise.

In sum, the officer's reference to defendant's exercise of a constitutional right "jeopardize[d] the right to a fair trial," because, from that reference, "the jury was likely to infer that [defendant] exercised the right because he was guilty of the charged offense." *Veatch*, 223 Or App at 455. The trial court did not cure that impropriety, immediately

or otherwise, and no other evidence negated the inference of guilt. Accordingly, it was error to deny defendant's motion for mistrial.

Reversed and remanded.