414 August 6, 2025 No. 708

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOE'VONNTAE LAMARIO SANDERS,
aka Joe Sanders, aka Joe Vonntae L. Sanders,
aka Joe Vonntae Lamailo Sanders,
aka Joe Vonntae Larmario Sanders,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR34208; A181352

Christopher A. Ramras, Judge.

Submitted February 12, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of unlawful use of a weapon with a firearm, ORS 166.220, and one count of felon in possession of a firearm, ORS 166.270(1).[1] On appeal, he raises four assignments of error. His first assignment of error challenges the admission of evidence that he possessed a handgun and two bullets upon his arrest, approximately two weeks after the charged incident occurred. His remaining assignments of error challenge the trial court's admission of evidence that he invoked his constitutional rights during a police interrogation. For the reasons that follow, we affirm.

O testified that she had invited defendant, a long-time acquaintance, to her apartment. According to O, while they were there, defendant became upset, pulled out a gun, and shot a hole into the floor of the apartment. He then fled the apartment on foot. Police never located the spent bullet, nor did they find a gun in O's apartment. But police did find an unspent nine-millimeter bullet on the floor in the apartment. They arrested defendant approximately two weeks later, and a bystander saw defendant discard a gun shortly before his arrest. That gun was a black nine-millimeter handgun. When police searched defendant shortly after his arrest, they also found two different colored nine-millimeter bullets on his person.

Defendant's first assignment of error challenges the trial court's admission of evidence that he possessed a handgun and two bullets at the time of his arrest. Defendant contends that the evidence was inadmissible under OEC 404(3) because its relevance relied on impermissible propensity reasoning and it was unfairly prejudicial under OEC 403.

We first note that the litigation in the trial court and the briefing here on appeal focused solely on admissibility under OEC 404(3). The Supreme Court has more recently explained that "the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4), not OEC 404(3)." *State v. Davis*, 372 Or 618, 633,

---

[1] Defendant was also charged with one count of first-degree robbery and one count of first-degree burglary. The jury acquitted him on those counts.

553 P3d 1017 (2024). Nevertheless, if the evidence does not require the factfinder to employ propensity reasoning, we may affirm even if the trial court analyzed the evidence under OEC 404(3) rather than OEC 404(4). *State v. Hutchinson*, 337 Or App 426, 431-32, 563 P3d 986, *rev den*, 373 Or 738 (2025).

Under OEC 404(4), evidence of "other acts" by a criminal defendant is generally admissible if relevant under OEC 401 and if it "withstand[s] OEC 403 balancing to determine whether its probative value is substantially outweighed by its prejudicial effect." *Davis*, 372 Or at 634-35. "We review the trial court's determination that other acts evidence is relevant and admissible under OEC 404(4) for legal error. We review whether otherwise admissible evidence should be excluded as unfairly prejudicial under OEC 403 * * * for abuse of discretion." *State v. Hernandez*, 339 Or App 127, 129, 566 P3d 677 (2025) (internal quotation marks and citation omitted).

In this case, to prove the charged crimes, the state had to prove that defendant had a firearm at the time of the incident at O's apartment. The nine-millimeter bullet found in O's apartment suggested that defendant had used a nine-millimeter gun when committing the charged acts. Upon defendant's arrest two weeks later, police found that he had a nine-millimeter gun and two nine-millimeter bullets. Here, there was sufficient "evidence linking the weapon [he possessed upon his arrest] to the crime and to the defendant" to make it relevant to the jury's assessment of whether defendant committed the charged acts. *State v. Thompson*, 228 Or 496, 499, 364 P2d 783 (1961). The state offered the evidence that defendant possessed a nine-millimeter gun and two bullets upon his arrest to show that defendant had a nine-millimeter gun, making it more likely that he committed the charged acts. That is not a propensity purpose prohibited by OEC 404(3), nor does it require the factfinder to conclude that defendant has the propensity to illegally possess guns as a felon. Therefore, the evidence does not rely on propensity reasoning and is not barred by either OEC 404(3) or OEC 404(4).[2]

_____

[2] We note that it is debatable whether the handgun evidence constituted an "other act" for purposes of OEC 404, rather than direct evidence of the charged crimes. In a recent concurring opinion, Justice James pointed out that the Oregon Supreme Court has "failed to develop any jurisprudence around what it means to be an act under OEC 404." *State v. Taylor*, 372 Or 536, 557-58, 551 P3d 924 (2024)

We similarly reject defendant's argument that the trial court abused its discretion in admitting the evidence under OEC 403. Under OEC 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. We review a trial court's decision to admit evidence under OEC 403 for abuse of discretion. *State v. Slay*, 331 Or App 398, 401, 545 P3d 768, *rev den*, 372 Or 560 (2024). The trial court must balance the proponent's need for the evidence against the countervailing danger for unfair prejudice. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987). Here, the record demonstrates that the trial court considered the state's need for the evidence, which was substantial because the state had to prove that defendant had a gun during the incident. The trial court also recognized the potential for unfair prejudice, but determined that it did not substantially outweigh the probative value of the evidence. Moreover, the trial court offered a limiting instruction to further mitigate any potential for prejudice—an offer which defendant declined. Under the circumstances, we conclude that the trial court did not abuse its discretion in admitting the evidence under OEC 403.

Defendant's second through fourth assignments challenge the trial court's admission of evidence that defendant invoked his constitutional rights during a police interrogation. The state acknowledges that the evidence was objectionable, but contends that the trial court did not plainly err by failing to declare a mistrial after it immediately gave a curative instruction and defendant made no objection.

At trial, Detective Prosser testified about his interview with defendant the day after defendant's arrest. During the detective's testimony, the state played a recording of the interview for the jury. In the interview, after defendant waived his *Miranda* rights, the detective questioned him

---

(James, J., concurring). Federal courts, when confronted with circumstances similar to this case, have concluded that evidence of the defendant's possession of a gun at his arrest was "intrinsic, direct evidence of the charged crime" and not evidence of "other crimes, wrongs, or acts" under FRE 404(b), the federal analog to OEC 404(3). *United States v. Shea*, 159 F3d 37, 39 (1st Cir 1998), *cert den*, 526 US 1077 (1999); *see also United States v. Adams*, 604 F3d 596, 599 (8th Cir 2010) (evidence that the defendant possessed the same gun used in the criminal incident was direct evidence of the crime charged and not subject to FRE 404(b)).

about the incident at O's apartment several weeks prior. Defendant denied knowing O or visiting that apartment complex. Defendant then asked:

"THE DEFENDANT:   This has nothing to do with my case from yesterday?

"DETECTIVE PROSSER: Nothing to do with it whatsoever.

"THE DEFENDANT:   All right. Then I don't want to talk. I want to see my attorney."

Prosser then ended the interview, and the recording concluded. After the detective finished testifying, the trial court *sua sponte* provided a curative instruction to the jury: "Just because you heard in the recording [defendant] request an attorney, in no way \*\*\* can that be considered by you in deciding whether or not the State has proven its case. A person has an absolute right to request an attorney." At no point did defendant object or move for a mistrial.

A reference by a witness to the fact that a defendant exercised a constitutional right, such as the right to remain silent or the right to counsel, "may prejudice the defendant's ability to have a fair trial if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense." *State v. Osorno*, 264 Or App 742, 748, 333 P3d 1163 (2014). In determining the prejudicial effect of such evidence, we consider whether the context in which the reference was made likely gave rise to an adverse inference of guilt, and if so, whether the resulting prejudice was cured by the trial court's curative instruction. *State v. Veatch*, 223 Or App 444, 459-60, 196 P3d 45 (2008).

In this case, the reference to defendant's invocation of his rights was objectionable. However, defendant failed to preserve the argument he now raises on appeal. *See State v. Reyes-Castro*, 320 Or App 220, 227, 511 P3d 1115, *rev den*, 370 Or 472 (2022) (arguments not specifically raised by the parties below are "effectively preserved" only "when the issues were actually argued and ruled on and the purposes of the preservation requirement appear to have otherwise been served"). Defendant never alerted the trial court to his argument that the curative instruction was insufficient, and

that a declaration of a mistrial was required. We therefore consider whether the trial court plainly erred by not *sua sponte* declaring a mistrial in response to the segment of the interview where defendant invoked his constitutional rights.

Plain error review involves a two-step inquiry in which we must determine whether the error is plain and decide whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). For an error to be plain, "it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

Not every mention of a defendant's invocation of constitutional rights requires the court to grant a motion for a mistrial. A mistrial is not required where a jury is unlikely to draw an inference of guilt. *State v. Hunt*, 297 Or App 597, 601, 442 P3d 232 (2019); *see also State v. McClatchey*, 259 Or App 531, 542, 314 P3d 721 (2013) (concluding that, given the context and the single reference, the trial court could reasonably conclude that the jury was unlikely to draw adverse inferences of guilt from the defendant's invocation of his right to silence). A jury is unlikely to draw an adverse inference of guilt "when the testimony involves an isolated and indirect reference that is merely incidental to some other focal point of discussion." *Hunt*, 297 Or App at 601. However, a trial court may err in denying a defendant's motion for mistrial in response to a single reference to a defendant's invocation of his constitutional rights*, id.* at 604, which was apparently unintentionally elicited by the prosecution, *State v. Schumacher*, 315 Or App 298, 304, 500 P3d 698 (2021), and where the court promptly gave a curative instruction, *Veatch*, 223 Or App at 461.

Under the circumstances of this case, where defendant did not move for a mistrial, we conclude that it is not obvious and beyond dispute that the trial court had to affirmatively declare a mistrial. First, the parties do not cite any case law in which a trial court plainly erred by failing to *sua sponte* declare a mistrial when the jury hears evidence of a defendant's invocation of his rights. *See State v. Moravek*, 297 Or App 763, 773-74, 444 P3d 521, *rev den*, 365 Or 533

(2019) (concluding that, where the parties presented no cases demonstrating trial court error, any error was not obvious for purposes of plain error review). Second, it appears that the state offered the detective's interview with defendant to show that defendant had lied about knowing O and having been at O's apartment complex. The reference to defendant's invocation of his rights was an isolated incident and apparently incidental.[3] Under those circumstances, and in light of the trial court's curative instruction, it is not obvious and beyond dispute that the recording was so prejudicial so as to have denied defendant a fair trial.

We also note that, although the court's curative instruction addressed only defendant's invocation of his right to counsel and not his invocation of his right to silence, it is not obvious and beyond dispute that the instruction was not sufficiently curative to ensure a fair trial. *See McClatchey*, 259 Or App at 542 (concluding that, under the circumstances, the trial court did not have a *sua sponte* duty to give any curative instruction). Article I, section 12, of the Oregon Constitution, protects against compelled self-incrimination and the derivative right to assistance of counsel.[4] *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007). During the interrogation by the police, defendant invoked both rights in immediate succession, stating, "Then I don't want to talk. I want to see my attorney." After the officer finished testifying, the trial court then instructed the jury that "in no way" could it use defendant's invocation of the right to counsel against him. While the court could have been clearer in referring to both rights separately, it is not obvious to us in context that a jury would have been misled in these circumstances into believing that it could use any

---

[3] Defendant argues that the state made use of the invocation evidence in its closing argument when the prosecutor stated that Prosser "ha[d] a very brief interview with [defendant]. And trie[d] to ask him questions about this case." We have reviewed the transcript and conclude that the prosecutor's statement was not a reference to defendant's invocation of his right to remain silent, but rather a comment on defendant's repeated denials that he knew O or had been to her apartment. The prosecutor went on to explain that defendant's responses to the detective in that interview were "directly contrary" to O's testimony that she and defendant had known each other for 16 years. We are therefore unpersuaded by defendant's argument that the state highlighted the impermissible evidence in its closing argument.

[4] Article I, section 12, of the Oregon Constitution provides: "No person shall be * * * compelled in any criminal prosecution to testify against himself."

part of defendant's invocation of his rights against him. We therefore conclude that the trial court did not plainly err by instructing the jury and failing to *sua sponte* declare a mistrial.

Affirmed.