Argued and submitted August 23, 2019, supplemental judgment affirmed January 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GILBERTO JENSEN,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR33051; A167096

480 P3d 296

Defendant appeals from a supplemental judgment holding him jointly and severally liable for restitution to the victim. On appeal, defendant argues that the victim did not assert a timely restitution claim because the victim failed to assert his claim for restitution within 30 days of the date that he "reasonably should have known" that his constitutional right to restitution had been violated. ORS 147.515(1). Defendant also argues that the trial court should have apportioned liability for the victim's damages among defendant and his two codefendants because defendant did not cause the victim's most serious injuries and the trial court was required to apportion liability under ORS 31.600. *Held*: The trial court did not err. The trial court could have found that the victim reasonably, although mistakenly, understood that defendant had agreed to extend the 90-day period for the state to seek restitution, and, thus, the victim's restitution claim was timely. Further, the trial court did not err in holding defendant jointly and severally liable: The trial court could have found that the victim's damages were the reasonably foreseeable result of the joint assault on the victim engaged in by defendant and his codefendants, and ORS 31.600 is inapplicable in this case given the trial court's rulings and defendant's conduct.

Supplemental judgment affirmed.

John A. Wittmayer, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Kistler, Senior Judge.*

KISTLER, S. J.

Supplemental judgment affirmed.

_____
* Kistler, S. J., *vice* Armstrong, P. J.

**KISTLER, S. J.**

Defendant appeals from a supplemental judgment holding him jointly and severally liable for approximately $17,800 in restitution. He argues that the victim did not assert a timely restitution claim and that, if the claim was timely, the trial court should have apportioned liability for the victim's damages among defendant and his two codefendants. We affirm.

After leaving a concert, the victim and his girlfriend were walking through a parking lot. As they did so, three men (defendant, Pleasant, and Burda) assaulted the victim.[1] The victim was hit, thrown to the ground, and kicked in the head. The state charged the three defendants with multiple counts of assault. In separate hearings, defendant, Pleasant, and Burda each pled guilty to one count of third-degree assault.

At defendant's plea hearing, defendant admitted that, "while being aided by another person actually present, [he] knowingly caused physical injury to another person." Defendant's lawyer told the trial court that, although his client knowingly had caused physical injury to the victim, defendant had not inflicted the blows that caused the victim's most serious injuries, including a traumatic brain injury. Rather, according to defendant's lawyer, the other two defendants (Burda and Pleasant) had done so. Defendant's lawyer acknowledged that aiding and abetting "is a close call when [my client] didn't participate in the actual act [kicking the victim in the head] that caused the real damage, uhm, but this was the compromise." He added, "But you will see in [the plea petition] that restitution is joint and several."[2] The trial court accepted defendant's guilty plea and sentenced him to 30 days in jail and three years of supervised probation. The judgment against defendant was entered on January 31, 2017.

---

[1] A fourth man was also present. However, he was not found after the assault, and there was no specific evidence regarding the extent, if any, of his involvement.

[2] The plea petition states that defendant understood that the district attorney was recommending "Restitution J & S w/ Co-Δ."

Burda and Pleasant also pled guilty and were sentenced to 30 and 36 months in jail respectively. Additionally, Burda and Pleasant each agreed to pay a $5,000 compensatory fine to the victim. All three defendants were sentenced, and restitution was left open in all three cases for 90 days after the entry of the judgments. *See* ORS 137.106(1) (providing that evidence of the nature and amount of a victim's damages shall be presented to a trial court within 90 days after the entry of judgment, unless that period is extended for good cause). On April 27, 2017, within 90 days of the date that judgment was entered in defendant's case, the victim's lawyer sent the attorneys for all three defendants a packet of restitution documents.

No restitution hearing was held within 90 days after the judgments were entered against the three defendants. Rather, the deputy district attorney initially assigned to the case, the victim's attorney, and the attorneys for the three defendants engaged in "prolonged discussions [over several months] regarding a stipulated restitution amount and settling any additional civil claims." At some point during those discussions, a different deputy district attorney was assigned to the case. The parties' discussions reached an impasse near the end of 2017. On November 16, 2017, the state sought a consolidated restitution hearing, which the trial court set for December 8, 2017.

On December 1, 2017, the state filed a motion and memorandum in support of restitution in which it stated that it "anticipate[d] that one or more defendants will challenge the re-opening of restitution after 90 days has passed." However, the state observed that, under *State v. Thompson*, 257 Or App 336, 306 P3d 731, *rev den*, 354 Or 390 (2013), the trial court could consider the victim's right to restitution under Article I, section 42, of the Oregon Constitution independently from the state's statutory authority to establish the amount of restitution within 90 days of the entry of judgment. The state took the position that the victim had sustained economic damages of $27,811.48, primarily for past and future medical bills resulting from the assault.

Three days later, on December 4, 2017, defendant filed a restitution memorandum in which he asserted that

any constitutional restitution claim asserted by the victim would be untimely.[3] Defendant appeared to take the position that the victim's 30-day period for asserting his constitutional right to restitution began to run immediately after the state's 90-day period for seeking restitution lapsed at the end of April 2017. Because the victim had not asserted a constitutional right to restitution within that 30-day period—namely, before the end of May 2017—defendant concluded that any constitutional restitution claim asserted by the victim would be time barred. Alternatively, defendant argued that Burda and Pleasant had been directly responsible for the victim's most serious injuries, which had occurred while the victim was on the ground, and that defendant had only "thr[own] arm punches" at the victim while he was standing. It followed, defendant argued, that he should be held liable only for the injuries he caused.

We set out in greater detail below the evidence and arguments that the parties offered at the restitution hearing on those two issues, as well as the trial court's rulings. It is sufficient to note at this point that the trial court disagreed with both arguments that defendant raised and imposed joint and several liability on each of the three defendants for $17,811.14 in restitution—the full amount of the victim's damages ($27,811.14) less the total compensatory fines ($10,000) that Burda and Pleasant had already paid.

On appeal, defendant assigns error to the trial court's ruling that the victim's constitutional claim was timely, as well as its ruling that defendant was liable for all the victim's damages. We begin with the timeliness of the victim's claim. On that issue, defendant recognizes that the victim has a constitutional right to seek restitution if the state failed to seek restitution under ORS 137.106 in a timely fashion. *See Thompson*, 257 Or App at 344-45. He notes, however, that ORS 147.515(1) required the victim to inform the court that he was asserting his constitutional right to restitution "within 30 days of the date the victim knew or reasonably should have known of the facts supporting [a violation of the victim's right to restitution under

---

[3] Burda and Pleasant did not challenge the timeliness of either the state's statutory or the victim's constitutional restitution claim.

Article I, section 42].” On appeal, defendant does not appear to dispute that the victim asserted his constitutional restitution claim within 30 days of the date that the victim actually knew that the state had failed to seek restitution in a timely fashion. He argues, however, that the victim failed to assert his claim within 30 days of the date he “reasonably should have known” of the state’s failure.

As we explain below, we question whether defendant preserved the constructive knowledge issue that he raises on appeal. However, even if he did, the trial court reasonably could have found, based on the evidence at the restitution hearing, that the victim informed the trial court of his constitutional restitution claim within 30 days of the date that he knew or reasonably should have known that his constitutional rights had been violated. We first set out the evidence and the arguments offered at the restitution hearing on that issue. We then turn to whether defendant preserved the constructive knowledge claim he raises on appeal and, if he did, whether the victim’s claim was timely.

At the restitution hearing, the victim’s attorney explained that defendant’s restitution memorandum, filed four days before the December 8 hearing, was the first time that the victim was aware that defendant had not agreed to extend the 90-day period for establishing the amount of restitution. Defendant responded that the victim’s position “puts a completely different light on [defendant’s] statutory argument” under ORS 147.515. The trial court agreed. It observed, “If [the victim is] correct about that, then there’s no issue, is there, it’s not too late? Because they have not blown any time line.” Defendant agreed, “Right, it would— potentially would only leave the causation but for test.”

With the issue framed that way, the deputy district attorney told the court that, when he inherited the case from his predecessor, he understood that defendant “was similarly situated to these other two defendants [Pleasant and Burda] who had essentially agreed to keep [restitution] open.”[4] The deputy district attorney explained that “it was

---

[4] Neither Burda nor Pleasant disputed the deputy district attorney’s statement that they had agreed to keep restitution open.

never made clear to [him] that the 90 days was not extended as to [defendant]."[5] As a result, he never notified the victim or the victim's attorney that defendant had not agreed to keep restitution open while the parties sought to settle all three defendants' liability for restitution and civil damages.

The victim's attorney confirmed the deputy district attorney's statements. He advised the court that he had sent a packet of restitution documents to the attorneys for all three defendants on April 27, 2017, and that, until defendant filed his restitution memorandum on December 4, 2017, no one had put him on notice that the state was time barred from seeking restitution from defendant. As the victim's attorney explained, "It was the restitution memorandum filed on behalf of [defendant] that first notified me *** two or three days ago *** that there was any issue as to whether or not the time for determining restitution had—had or had not been extended."

When asked for his response, defendant's attorney observed initially that *Thompson* had not decided the timeliness of the victim's constitutional claim because the defendant in *Thompson* had not raised that issue. The trial court noted that, while defendant's observation about *Thompson* was correct, the victim's position in this case was "that the 30 day period in ORS 147.515 beg[an] to run about two or three days ago." The court said, "that's the dispositive issue for today, isn't it," and defendant's attorney agreed that it was. The only information that defendant's attorney added to the mix was that he did not "control what the DA is telling to a victim or a victim's attorney." He also stated that he knew that the state's 90-day period for seeking restitution had lapsed in April and that the victim's attorney sent him an email with a packet of restitution information on April 27.

Given that information, the trial court ruled that the victim first received notice a few days before the

---

[5] The statements offered by the attorneys for the state, the victim, and the defendant were not made under oath at the restitution hearing. However, no party has objected, either at trial or on appeal, to the trial court's considering the attorneys' unsworn statements in deciding whether the victim's constitutional claim was timely.

December 8, 2017, hearing that defendant had not agreed to extend the 90-day period. As a result, the trial court concluded that the victim had asserted a timely constitutional restitution claim. On appeal, defendant does not appear to dispute that the victim did not actually know, until he received defendant's December 4 restitution memorandum, that the 90-day period for the state to establish the amount of restitution owed had not been extended by agreement. He argues, however, that the victim "should have known" long before then that the 90-day period had expired.

Defendant never raised the issue of constructive knowledge with the trial court that he seeks to raise on appeal. Rather, when the trial court observed that "the dispositive issue for today" is whether "the 30 day period in ORS 147.515 beg[an] to run about two or three days ago," defendant agreed. He did not argue that the dispositive issue was whether the victim "should have known" that the 30-day period had begun to run months earlier. In our view, defendant failed to preserve the issue of constructive knowledge at the restitution hearing that he raises on appeal.

If, however, defendant adequately raised the issue of constructive knowledge at the restitution hearing, then the trial court implicitly resolved that issue against him. The question accordingly reduces to whether there was evidence before the trial court to support its ruling. *See Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 281-82, 265 P3d 777 (2011) (explaining that, when the evidence permitted competing inferences regarding when the plaintiff should have known that his lawyer had been deficient and that his cause of action had accrued, the issue should go to the trier of fact); *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 37-38, 147 P3d 1154 (2006) (applying the same standard in product liability cases).[6]

In this case, the deputy district attorney explained that all three defendants had negotiated settling restitution

---

[6] The court explained in *Keller* that, because the statute of limitations is an affirmative defense, the party asserting that defense has the burden of production and persuasion on that issue. 342 Or at 38 n 12. It follows that, if there is no information on a relevant issue, then the absence of evidence cuts against the party asserting a limitations defense. *Id.*

and civil liability up until late 2017 and that he understood, incorrectly it turned out, that defendant had agreed to extend the 90-day period, just as Burda and Pleasant had done. Accordingly, he did not advise the victim or his attorney that the statutory 90-day period for seeking restitution had not been extended as to defendant.

Given that evidence, the trial court reasonably could have found that the deputy district attorney in this case stood in a similar relationship to the victim as the lawyer stood to the plaintiff in *Kaseberg*; that is, the victim and his lawyer reasonably could rely on the deputy district attorney to inform them about the status of restitution in the criminal case. Additionally, the trial court reasonably could have found that the deputy district attorney had not told the victim that defendant had not agreed to extend the 90-day statutory deadline. Finally, the court could have found that, in light of defendant's continued participation in the settlement discussions up through late 2017, neither the victim nor his attorney had any reason to question whether defendant had agreed to extend, as Pleasant and Burda had done, the 90-day period for seeking restitution.[7] It follows that the trial court could have found that the victim reasonably understood up until late 2017 that the state had good cause—namely, defendant's agreement—to extend the 90-day period. *See State v. Taylor*, 300 Or App 626, 636, 455 P3d 609 (2019), *rev den*, 366 Or 493 (2020) (recognizing that a defendant's agreement can provide good cause for extending the 90-day period).

We note that the issue in this case is not whether the deputy district attorney had good cause to extend the 90-day period for seeking restitution from defendant. Rather, the question is whether the victim reasonably should have

---

[7] At first blush, it might seem unusual that defendant would have continued to participate in the settlement discussions through late 2017 if the 90-day period for the state to seek restitution had lapsed as to defendant in April and, in defendant's view, the 30-day period for asserting a constitutional restitution claim had lapsed in May. However, the settlement discussions sought to resolve all the defendants' liability for restitution and civil damages. Even if defendant's obligation to pay restitution had lapsed, the trial court reasonably could have found that the prospect of resolving civil liability provided defendant with a sufficient incentive to continue participating in the settlement discussions without mentioning to anyone that, in his view, he was no longer liable for restitution.

known that the district attorney lacked good cause to extend. For the reasons explained above, the trial court could find that the victim had no reason to think that defendant had not agreed, as Burda and Pleasant had done, to extend the 90-day period for presenting restitution evidence.

Perhaps the victim was on inquiry notice when the state filed its December 1, 2017, memorandum in which it noted that one or more of the defendants might argue that the 90-day period for seeking restitution had expired. However, the record created at the restitution hearing did not require the trial court to find that defendant should have known that the 90-day period had expired before the state filed its memorandum on December 1, and the victim informed the trial court of his constitutional claim for restitution at the December 8 hearing, well within the 30-day period provided in ORS 147.515. On this record, the trial court reasonably could have found that the victim's constitutional restitution claim was timely.

Defendant also assigns error to a second ruling. He argues that the trial court erred in imposing restitution on him for all the damages that the victim suffered. He contends initially that his conduct did not cause the victim's most serious injuries. Alternatively, he argues that the trial court should have apportioned liability among the three defendants under ORS 31.600 based on each defendant's respective fault. We note, as an initial matter, that those two arguments raise separate issues. One seeks to limit liability based on causation. The other seeks to limit responsibility of the injuries that all three defendants jointly caused based on each defendant's respective fault. We begin with defendant's causation argument.

At the restitution hearing, the victim testified to the events surrounding the assault. He explained that, as he was walking through a parking lot after the concert, he "heard running behind [him]." He turned and saw Pleasant, whom he knew, and two other men, whom he did not know. The two men grabbed his arms while Pleasant began hitting him. The victim explained that, "as [Pleasant] was punching me, they all dragged me up to like a car hubcap. And then, you know, while I was there on the ground,

they pretty much all just started kicking me in the head." When asked whether they were "all *** actively engaged in assaulting [him]," the victim answered, "Yes." He said, "They were standing in front of me before I—I mean, I think it was probably like after getting hit, like kicked for a while, I blacked out probably after like fifteen seconds."

Defendant painted a different picture. His lawyer noted that, according to Pleasant, Pleasant and Burda had attacked the victim while the victim was on the ground but that Pleasant was "unsure" if defendant "was involved at all."[8] Defendant's lawyer also noted that an independent witness had said that two people had attacked the victim while he was on the ground but that three men had run away together. Finally, defendant's attorney stated that his client had admitted throwing "some arm punches in the fight" but added that defendant said he had intervened to stop the "ground assault, and we all got the hell out of there." After considering that evidence, the trial court ruled that the three defendants were joint tortfeasors and held them jointly and severally liable for all the damages that the victim had suffered.

A criminal defendant is liable in restitution for all the economic damages that "result from" the defendant's crime. *State v. Ramos*, 358 Or 581, 587, 368 P3d 446 (2016) (paraphrasing ORS 137.106(1)). As the court explained in *Ramos*, the legislature's use of the word "result" in ORS 137.106 means that a defendant is liable for restitution for only those damages that are reasonably foreseeable. *Id.* at 596. As we understand defendant's argument on appeal, he does not challenge the legal standard that the trial court applied in determining whether his criminal acts were causally connected to the victim's injuries. Rather, he argues, apparently as a matter of law, that the evidence did not permit a reasonable inference that defendant's actions resulted in the more serious injuries that the victim suffered.

---

[8] Defendant did not call any witnesses at the restitution hearing. Rather, the parties agreed that defendant's lawyer could summarize the police report and statements that Burda and Pleasant had made and that the trial court would consider them as evidence.

We disagree for two reasons. First, the trial court reasonably could have credited the victim's statement that "they pretty much *all* just started kicking me in the head" while he was on the ground in finding that all three defendants were jointly and severally liable for all the victim's injuries. (Emphasis added.) Although defendant argued that the evidence showed that he did not do anything other than throw a few arm punches at the victim while he was standing, the trial court was not required to credit the defendant's minimization of his own acts or discredit the victim's testimony that all the defendants were kicking him in the head.

Second, even if only Burda and Pleasant inflicted the more serious injuries once the victim was on the ground, the trial court reasonably could have found that their acts were the reasonably foreseeable result of the joint assault that all three defendants began. This is not a case in which defendant failed to take reasonable steps to protect the victim from a criminal assault by an unknown third party that he reasonably should have foreseen. *Cf. Piazza v. Kelim*, 360 Or 58, 83-84, 377 P3d 492 (2016) (explaining that the complaint stated a claim that a business owner reasonably should have foreseen that, based on the nature and history of assaults in the area, its patrons would be subject to violent assaults from unknown assailants); *Panpat v. Owens-Brockway Glass Container*, 188 Or App 384, 392-93, 71 P3d 553 (2003) (discussing when a defendant reasonably can foresee the likelihood of criminal conduct by a third party).

Rather, this is a case in which defendant jointly began an assault on the victim, making the victim vulnerable to further harm from his two codefendants. *Cf. Cunningham v. Happy Palace Inc.*, 157 Or App 334, 339, 970 P2d 669 (1998), *rev den*, 328 Or 365 (1999) (holding that, having ejected an intoxicated patron from its restaurant, the defendant put the victim in a vulnerable position and reasonably should have foreseen the likelihood of a criminal assault by an unknown third person). Moreover, the persons who, according to defendant, inflicted the most serious injuries on the victim were not some unknown hypothetical assailants. They were the very persons with whom defendant had jointly begun the assault on the victim, and defendant was aware that Pleasant was motivated,

for some undisclosed reason, to injure the victim. It should have come as no surprise to defendant that, once the victim was rendered helpless on the ground, Pleasant and Burda would continue the assault that defendant and his two code-fendants had begun. It follows that, even if Pleasant and Burda (but not defendant) continued to assault the victim once he was on the ground and inflict more serious injuries, the trial court could find that their actions (and all the vic-tim's damages) were the reasonably foreseeable result of the joint assault that defendant began.[9]

On appeal, defendant raises a related but separate issue. He argues that the trial court should have appor-tioned liability according to each defendant's comparative fault under ORS 31.600. Defendant's lawyer, however, asked the court to limit his client's liability based on causation. He never asked the court to apportion liability based on comparative fault. Indeed, defendant's lawyer told the trial court that comparative fault did not apply to restitution. Specifically, he told the trial court that restitution is "not, in my limited understanding of the civil law, it's not com-parative negligence like a car accident." It thus appears that defendant conceded the comparative fault issue at trial that he now seeks to raise on appeal. Moreover, apportionment based on fault under ORS 31.600 applies only if liability is several. *See* ORS 31.610(2) (providing that comparative fault applies where liability is several). Here, the trial court ruled, and defendant apparently agreed, that liability was joint and several. *See* 308 Or App at 820 n 9. Finally, defen-dant acted with a degree of culpability "greater than what the common law considered to be 'gross negligence.'" *See State v. Gutierrez-Medina*, 365 Or 79, 84, 442 P3d 183 (2019). He admitted at his plea hearing that "while being aided by

---

[9] We note that there is an internal tension in defendant's causation argu-ment. Defendant's attorney told the trial court at the plea hearing that liability for restitution would be joint and several, and defendant's attorney did not take issue with the victim's attorney's statement at the beginning of the restitution hearing that all three defendants agreed that liability for restitution would be joint and several. If defendant agreed that liability was joint and several, he can hardly argue that he was not liable for all the damages that the three defendants inflicted on the victim. Defendant may have a claim for contribution against his two codefendants, but being jointly and severally liable made defendant respon-sible to the victim for the entire amount that each of the three defendants owed him.

another person actually present, [he] knowingly caused physical injury to another person." Having admitted that he acted knowingly, defendant cannot rely on comparative fault to limit his liability. *See id.* at 83-84, 94.

Supplemental judgment affirmed.