Argued and submitted June 15, 2021, affirmed June 8, petition for review denied November 23, 2022 (370 Or 472)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROSA REYES-CASTRO,
*Defendant-Appellant.*

Marion County Circuit Court
18CR18747; A170614

511 P3d 1115

Defendant appeals her judgment of conviction for first-degree kidnapping, ORS 163.235, and the trial court's imposition of restitution to compensate for hospital bills resulting from the victim's injuries. In her first and second assignments of error on appeal, she argues that the trial court erred in denying her motion for judgment of acquittal (MJOA), contending that there was insufficient evidence that she aided and abetted her codefendant in the commission of a kidnapping. In her third assignment of error, she assigns error to the trial court's imposition of restitution, arguing that she did not personally cause the victim's injuries. *Held*: Defendant's MJOA at trial differed substantively from the specific theory of insufficiency that she presents on appeal and, therefore, failed to preserve her first and second assignments of error for review. The trial court also did not plainly err in convicting defendant of kidnapping on an aid-and-abet theory where the record contained evidence to support that conviction. Nor did the trial court plainly err by ordering defendant to pay restitution for the victim's medical bills where there was some evidence to support a causal link between the crimes for which defendant was convicted and the alleged damages.

Affirmed.

Donald D. Abar, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General.

Before Mooney, Presiding Judge, and Hellman, Judge, and DeVore, Senior Judge.*

_____

* Hellman, J., *vice* DeHoog, J. pro tempore.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals her judgment of conviction for first-degree kidnapping, ORS 163.235, and the trial court's imposition of restitution to compensate for hospital bills resulting from the victim's injuries.[1] On appeal, she raises three assignments of error. In her first two, she assigns error to the trial court's denial of her motion for judgment of acquittal (MJOA), arguing that there was insufficient evidence that she aided and abetted her codefendant in the commission of a kidnapping. In her third, she assigns error to the trial court's imposition of restitution because she did not personally cause the victim's injuries. For the reasons below, we conclude that none of her claims of error were preserved for appeal. We further conclude that the trial court did not plainly err in either respect. Accordingly, we affirm.

## BACKGROUND FACTS

We review the evidence supporting the trial court's denial of defendant's motion for judgment of acquittal and the trial court's restitution order in the light most favorable to the state. *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019); *State v. Howard*, 292 Or App 517, 519, 424 P3d 803 (2018). We state the facts in accordance with that standard.

Defendant's kidnapping conviction[2] is the result of her involvement in the detention of the victim, an acquaintance, at defendant's home. The victim, A, was a roommate of defendant's friend, Max. On a night in March 2018, A and Max were at a bar together when A got into a fight with friends and was kicked out of the bar. Max told A that he was no longer welcome to stay at Max's home, and A left the bar alone. He returned to Max's home, shattered a back door to gain entry, and caused extensive damage to the home in the course of gathering his own belongings. A also took Max's briefcase and an ID for Max's friend, José, before leaving to stay at his father-in-law's home.

---

[1] Defendant does not challenge her conviction for coercion, ORS 163.275.

[2] Defendant was charged with and convicted of two counts of kidnapping. The trial court merged the guilty verdicts and entered a conviction for one count of kidnapping.

Max returned home early in the morning and discovered the damage that A had caused. He immediately called defendant and her husband, Mario, who came over to see the damage. Once there, defendant noted that she thought A might also have been the person who had broken into her and Mario's home and stolen $50,000 in cash, among other items, the previous week.

Later that morning, A called the number on José's ID and asked José if he would facilitate a meeting with Max so that A could apologize to Max. José agreed and picked up A and drove him to defendant and Mario's home. A had never been to defendant's home before but waited outside with José until Max and Mario arrived a little after 2:00 p.m. The group then entered Mario's living room, and A sat down on a couch. Mario retrieved two bats, gave one to Max, and the two began beating and punching A, apparently under the impression that A was the one who had broken into both of their homes. Mario zip-tied A's hands behind his back, tied a rope over his chest, and placed duct tape over his mouth. After turning on a speaker to cover any noise, Mario would alternately remove the duct tape and ask A, "Where are my guns?" and "Where are my drugs?" and then replace the duct tape and beat A when he did not receive an answer.

Defendant had left the home just before 1:00 p.m. that afternoon to run errands with her daughter and was not home when the assault began. At some point around 2:30 p.m., Mario called defendant in front of A and placed her on speakerphone. Mario told defendant that they "have him here," and defendant responded that she was "at the school" and "already [had] the girls" and was "coming over." A understood that exchange to mean that defendant was threateningly implying that she had picked up A's own daughters from school.

Defendant arrived back home around 2:30 p.m. with her own daughter, who she placed in a back bedroom, but she did not have A's daughters. Defendant then joined the men in the living room, where she also began threatening A. When A would not answer defendant's questions, Max and Mario would continue beating him.

That continued for two to three hours, at which point Mario decided to release A rather than kill him after A promised to pay the group $20,000. As A was leaving, defendant told him not to call the police because her family was "military in Mexico." A called the police and reported the incident the next day. He was then taken to the hospital, where he spent four to five days undergoing treatment for injuries to his arm and knee and suicidal thoughts.

Defendant, Mario, and Max were jointly charged with two counts of first-degree kidnapping, ORS 163.235, and one count each of second-degree assault, ORS 163.175, third-degree assault, ORS 163.165, first-degree robbery, ORS 164.415, and coercion, ORS 163.275. Defendant and Mario proceeded to a joint bench trial; at the time, Max had absconded and was unable to be located. At the start of trial, the state dismissed the assault and robbery charges as to defendant. As to the remaining first-degree kidnapping charges, the state proceeded against defendant on an aid-and-abet theory, arguing that she had helped plan and commit the kidnapping by threatening A while he was bound and beaten by Mario.[3]

Both defendant and Mario primarily argued at trial that the events as alleged by A did not occur. Defendant testified that, on the day of the kidnapping, she had been running errands and arrived home with her daughter around 2:30 p.m. to find A and Max talking alone in her living room. She testified that her husband told her that A was there to apologize to Max for the damage caused at Max's home. She testified that she did not see A bound or tied up, that A was not injured in any way, and that he was "walking fine." She testified that she and her husband left 10 minutes later to go teach a waltz lesson.

At the close of the state's case, defendant and Mario each moved for a judgment of acquittal. As to the first-degree kidnapping charges, Mario argued that there was

---

[3] First-degree kidnapping as defined in ORS 163.235 requires that a person commit a second-degree kidnapping under ORS 163.225 along with one of the specific purposes listed in ORS 163.235. Here, the state alleged that defendant aided and abetted a kidnapping with the purpose of causing physical injury to the victim, ORS 163.235(1)(c) (Count 1), and with the purpose of terrorizing the victim or another person, ORS 163.235(1)(d) (Count 2).

not sufficient evidence to satisfy the elements of first-degree kidnapping that the victim was "secretly confined," ORS 163.225,[4] or that Mario had the "purpose to terrorize." ORS 163.235.[5] The trial court denied Mario's MJOA. Defendant then made her own MJOA, similarly arguing that, even if the court did "believe the State's theory that this thing happened," there was insufficient evidence to convict her of the underlying first-degree kidnapping charge where the evidence did not show that A had either been "secretly confined" or that defendant had directly "terrorized" A.

Given that A testified that defendant did not arrive home until he was already detained and did not participate in the actual assault, the trial court then asked the state to clarify its kidnapping theory as to defendant. The state argued that defendant's threats both on the phone call and while Max and Mario were beating A showed that she had participated and aided and abetted in the kidnapping of A. Defendant did not respond to the state's aid-and-abet theory. The trial court took defendant's motion under advisement until the end of the trial.

At the start of her closing argument, defendant renewed her MJOA and previous arguments and added that her argument would "follow through my closing." The trial court denied defendant's motion.

In her closing argument, defendant again argued that there was not sufficient evidence to fulfill the "secretly

---

[4] ORS 163.225 provides:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

[5] ORS 163.235 provides:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom;

"(b) To hold the victim as a shield or hostage;

"(c) To cause physical injury to the victim;

"(d) To terrorize the victim or another person[.]"

confined" element of kidnapping, nor sufficient evidence to support the first-degree kidnapping theory that she had acted with the purpose to cause injury or terrorize the victim. Her argument came down to a credibility contest, with defendant arguing that the sequence of events did not occur as A testified and that his testimony consisted of "inconsistencies and omissions and *** exaggerations." She ultimately argued that she believed Max and A were in a "lovers' spat" that she "somehow *** has got sucked into."

The trial court found defendant guilty of both counts of first-degree kidnapping on an aid-and-abet theory. The court explained that it "did find the victim's testimony credible" and "didn't find [defendant's] testimony credible at all ***."

On appeal, defendant first assigns error to the trial court's denial of her MJOA, arguing that there was insufficient evidence to convict her of first-degree kidnapping on an aid-and-abet theory. She argues that where the evidence is insufficient to show that A was "secretly confined" or that defendant acted with the purpose of terrorizing or causing physical injury to the victim, the evidence was insufficient to show that defendant intended to aid and abet a kidnapping. Defendant also assigns error to the trial court's imposition of restitution to the Oregon Health Plan for A's medical bills. Defendant argues that the trial court plainly erred, because there was no evidence that A's injuries were caused by the kidnapping and that they were instead solely the result of the assault, a crime for which defendant was not convicted.

The state argues that defendant's MJOA did not preserve her arguments as presented on appeal and that the trial court did not plainly err in convicting defendant where the record contains evidence that defendant assisted in either the planning or commission of the kidnapping. The state also argues that the trial court did not plainly err in imposing restitution on defendant where it is not obvious on this record that the kidnapping with intent to cause physical injury for which defendant was convicted did not cause the victim's injuries.

## PRESERVATION OF ERROR

Before we reach the merits of whether the trial court erred in denying defendant's MJOA as to the kidnapping charges or in imposing restitution, we must first determine whether defendant's challenges were preserved below. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); *State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004).

The preservation rule serves practical purposes. Requiring parties to first present their challenges to the trial court gives that court an opportunity to correct any error at the time it occurs. *Peeples*, 345 Or at 219-20. It also ensures that when the trial court rules on the issue, it has the benefit of hearing from both sides, because the opposing side has an opportunity to present its position at the time the challenge is raised. *Id.* Finally, if one party believes that the issue was not correctly resolved and raises it on appeal, we have the benefit of a fully developed record to consider when reaching our decision on the issue. *Id.*

Because the preservation rule is a practical one, we have determined that issues were effectively preserved even when they were not specifically raised by the parties. *State v. Roberts*, 291 Or App 124, 130, 418 P3d 41 (2018). But we only do so when the issues were actually argued and ruled on and the purposes of the preservation requirement appear to have otherwise been served. *Id.*; *see also State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). We evaluate defendant's assignments of error under that legal framework.

## DEFENDANT'S MJOA ON THE KIDNAPPING CHARGES

In this case, defendant's presentation to the trial court in her MJOA and closing argument did not explicitly preserve the claim she raises on appeal regarding the insufficiency of evidence on her aiding and abetting conviction. To understand why, it is necessary to be clear about what defendant argued below and what she assigns as error to us.

In the trial court, defendant took the position that no crime occurred. Her trial testimony characterized the

events as a voluntary conversation among herself, Mario, and A. She aligned herself with her codefendant's arguments regarding the lack of evidence to prove that a kidnapping took place or that it was committed with the purpose to terrorize or to cause physical injury to the victim. In her MJOA, she urged the trial court to discount the victim's version of events because his testimony was inconsistent, exaggerated, and untrustworthy. Notably, in her MJOA and in her closing argument, defendant never argued that, even if the events occurred the way in which the state alleged, her minimal involvement in those events was legally insufficient for an aiding and abetting conviction.

On appeal, defendant's argument has changed. She now argues that her minimal participation in the crime was legally insufficient to hold her criminally liable for aiding and abetting her husband. Defendant uses her arguments against her direct liability that she raised at the trial court as evidence that she lacked the required specific intent under ORS 161.155(2)(b) to aid and abet her husband's commission of first-degree kidnapping. But just because defendant raised an MJOA and made those arguments does not automatically mean that she has preserved her specific claim for the purposes of appeal. An MJOA must state the specific theory on which the state's proof was insufficient. *State v. Graham*, 251 Or App 217, 221, 284 P3d 515 (2012); *see also State v. Bistrika*, 262 Or App 385, 399, 324 P3d 584, *rev den*, 356 Or 397 (2014), *cert den*, 577 US 828 (2015) (explaining that the defendant's argument presented to the trial court "differed substantively from the theory" presented on appeal).

At trial, defendant's specific theory was that the state failed to prove a first degree kidnaping because there was legally insufficient evidence that the victim had been "secretly confined" under ORS 163.225 or that defendant had the purpose to terrorize the victim under ORS 163.235. Even when alerted at both the MJOA hearing and in closing arguments that the state was proceeding against her on an aiding and abetting theory, defendant never directly challenged the aiding and abetting theory by raising the argument that she now presents to us.

Defendant argues that her closing argument sufficiently preserved the issue, because trial counsel argued that her actions did "not make her a participant, an aider or abettor of any crime." We disagree. When viewed in context, it is clear that that statement was part of defendant's continuing effort to persuade the trial court, as factfinder, to disbelieve the victim's version of events. Defendant argued:

"As I said in the beginning, in my opening statements, I would ask the Court to kind of focus on [the victim's] testimony as far as the inconsistencies and omissions and the exaggerations.

"And I think more importantly, when I look at this case, I think this is really kind of a *** lovers' spat, squabble between Max and [the victim] that somehow my client has got sucked into. *And that does not make her a participant, an aider or abettor of any crime. It doesn't make her a participant in a crime.*

"But somebody who is hurt and did a—kind of a violent smashing up of Max's house, *** it wouldn't be a far stretch to see how he would want to hurt people that knew Max. And this is, I think, what happened. And I think that's reasonable doubt enough not to find my client involved in this kidnapping."

(Emphasis added.)

That kind of fact-based credibility argument is distinct from one of legal insufficiency. As we recently held, the former type of argument "seeks to convince the trial court that, although the court *could* find for the opposing party because that party has produced at least some evidence in support of its position, the court should not find for the party because its evidence is not persuasive." *Rookstool-Moden Realty, LLC v. Gallagher*, 304 Or App 450, 453, 465 P3d 300 (2020) (emphasis in original). The latter type of argument "asserts that the trial court *cannot* return a verdict for the opposing party because that party has failed to produce any evidence supporting at least one element of its claim or defense." *Id.*; *see also State v. R. W. G.*, 288 Or App 238, 240-41, 404 P3d 1131 (2017). Although neither *Rookstool-Moden Realty* nor *R. W. G.* were criminal cases, we see no reason to analyze preservation of claims of insufficiency of the evidence any differently in criminal cases.

Defendant further argues that the claim was pre-served because the trial court was aware of and ruled on the MJOA on the aiding and abetting theory. Again, we dis-agree. Because defendant only challenged the sufficiency of the evidence as to the elements of the underlying kidnap-ping charge, the trial court was not aware of any potential issue regarding the sufficiency of the evidence as to an aid-and-abet theory, nor did the state have an opportunity to respond. Importantly, as noted above, aiding-and-abetting liability requires the state to prove a specific intent sep-arate and apart from that of direct liability. *See State v. Kimbrough*, 364 Or 66, 84, 431 P3d 76 (2018) (explaining that "an individual who assists in or solicits the criminal conduct that will be committed wholly by someone else does not, and does not intend to, personally engage, *** in the conduct which will constitute the crime" (internal quota-tion marks omitted)). By not alerting the trial court or the state that she was pursuing such a separate and distinct legal theory, defendant did not satisfy the purposes of issue preservation.

To be sure, the trial court considered defendant's arguments about her lack of participation in the events. But that was in the context of determining whether a crime occurred at all. The trial court was never asked to, nor did it, rule on a challenge to whether defendant's minimal par-ticipation in the events was legally sufficient for aiding-and-abetting liability. Indeed, such a theory would have run contrary to defendant's unwavering position at trial that the events simply did not occur as the victim claimed they did. The trial court's lack of a specific ruling on that theory of sufficiency differentiates this case from instances where a court raising an issue *sua sponte* and subsequently issuing a specific ruling on the particular argument shows that the court was independently aware of the legal issue. *See State v. Smith*, 252 Or App 707, 714, 288 P3d 974 (2012) (determin-ing that an issue was preserved where the court ruled on the particular argument after raising the issue *sua sponte*).

In sum, defendant is relying on a MJOA supported by fact-based arguments that the events did not occur at all, to support a claim on appeal that even if the events occurred, her minimal participation in them was legally

insufficient to support an aid-and-abet theory of liability for kidnapping under ORS 161.155. Under those facts and our caselaw, defendant's MJOA failed to preserve her first and second assignments of error for review.

Defendant finally argues that even if her argument challenging the denial of her MJOA is unpreserved, the trial court plainly erred by not acquitting her of kidnapping on an aid-and-abet theory. When an issue is not preserved below, the appellant can nonetheless ask us to review for "plain error." ORAP 5.45(1), (4)(b), (7). Plain error review is a two-step process. We must first determine that the error is plain, which means that it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those three elements are met, we then must determine whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

In this case, we begin and end with the first step in the analysis. Viewed in the light most favorable to the state, the record contained evidence to support defendant's convictions. Defendant testified that she knew of the victim as Max's roommate and that, after seeing the damage that the victim caused to Max's home, she suspected that he was the person who had broken into her home the previous week. There was evidence that defendant and her husband had a conversation on speakerphone in which her husband said "we have him" and defendant indicated that she was coming over. The victim testified that, while he was detained in defendant's home and was bound, gagged, and beaten, defendant repeatedly threatened the safety of his daughters and his own life. Where there is evidence in the record to support a defendant's conviction, any error is not plain. *State v. Graham*, 251 Or App 217, 222, 284 P3d 515 (2012) (citing *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990)).

## RESTITUTION

As to defendant's third assignment of error regarding restitution, the record does not reflect that defendant presented her current causation argument to the trial court

at the restitution hearing, and defendant does not develop an argument to explain how it is preserved. We therefore treat her argument as unpreserved and proceed with our analysis solely in response to defendant's request for plain error review.

Defendant argues that the trial court erred in ordering her to pay restitution for A's medical costs because she did not personally cause the victim's injuries. She argues that defendant's injuries and resulting medical bills were instead solely the result of the assault for which her husband was convicted. We review whether a trial court has complied with the requirements for imposing restitution for errors of law, and we are bound by the trial court's factual findings if they are supported by any evidence in the record. *State v. Parsons*, 304 Or App 607, 612, 468 P3d 1033, *rev den*, 367 Or 76 (2020). Evidence supporting the restitution award is viewed in the light most favorable to the state. *State v. Howard*, 292 Or App 517, 519, 424 P3d 803 (2018).

Using the same plain-error standard discussed above, we conclude that the trial court did not plainly err in determining that the victim's medical bills were the result of the crimes for which defendant was convicted. In *State v. Gerhardt*, 360 Or 629, 636, 385 P3d 1049 (2016), the Supreme Court reaffirmed that "restitution may be awarded under ORS 137.106 if defendant's crime was a factual cause of the victim's economic damages and those damages were the reasonably foreseeable consequence of the crime." Damages are "reasonably foreseeable" if "a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *State v. Ramos*, 358 Or 581, 597, 368 P3d 446 (2016).

Here, the trial court did not plainly err by ordering defendant to pay restitution for A's medical bills. Defendant was convicted of aiding and abetting a kidnapping committed with the intent to cause physical injury to the victim. The victim testified that he was hospitalized for at least four days for injuries he incurred as a result of the kidnapping and assault, including a broken arm, broken kneecap, and suicidal thoughts. Even if defendant did not personally beat

the victim, this record demonstrates that the kidnapping had the required causal link to the victim's injuries, and that those injuries were a "reasonably foreseeable" result of the kidnapping for which defendant was convicted. *See State v. Jensen*, 308 Or App 808, 819, 480 P3d 296 (2021) (determining that even where the defendant did not cause the victim's more serious injuries, defendant's actions "[made] the victim vulnerable to further harm from his two codefendants"). This is not a case where the state presented no evidence to support a causal link between a defendant's convictions and the alleged damages. *Cf. Howard*, 292 Or App at 523 (finding plain error as to the causation requirement of a restitution order where the state presented *no* evidence linking the alleged damages to the defendant's convictions). Therefore, the trial court did not plainly err when it ordered defendant to pay restitution based on the medical bills the victim incurred as a result of his injuries.

In sum, defendant's challenges to the trial court's denial of her MJOA and imposition of restitution were both unpreserved, and the trial court did not plainly err in either respect.

Affirmed.